## PRYOR BROWN, et al. v. ROBERT WALLACE.

Eastern Section. July 9, 1932.

Petition for Certiorari denied by Supreme Court, October 19, 1932.

188

Anderson & Word, of Knoxville, for plaintiff in error.

Hartman, Hartman & Doughty, of Knoxville, for defendant in error.

OWEN, J. Robert Wallace the plaintiff below recovered a judgment of $3500 for personal injuries against the defendants; the defendants being Pryor Brown, C. J. Brown who were partners and doing business under the trade name of Pryor Brown Transfer Company, and Butler Julian, who, on November 16, 1929, was the operator of a taxicab, owned by the other two defendants. The defendants operated a taxicab business in Knoxville, Tennessee. Hereinafter Wallace will be called plaintiff, and the Pryor Brown Transfer Company and Julian will be called defendants.

There were three counts to plaintiff's declaration. The first was founded on common-law negligence, and the second count was based on the violation of a state statute; this count was abandoned.

The third count was based on the alleged violation of certain city ordinances relative to traffic operations in the city of Knoxville.

The defendants filed a plea of not guilty. There was a motion for a directed verdict at the conclusion of all the evidence; this was overruled. The cause was submitted to the jury, which returned a verdict in favor of the plaintiff for $3500. There was a motion for a new trial. The court was not satisfied with the amount of the recovery. The Trial Judge suggested a remittitur of $1000. This remittitur was accepted under protest, thereupon, the motion was overruled. The defendants excepted, prayed and perfected an appeal, and have assigned four errors:

The first error is that the court erred in overruling the defendants' motion for a directed verdict, made at the conclusion of all the evidence. The motion made at the conclusion of all the evidence was as follows:

MR. WORD: If your Honor please, I want to make a motion that the court peremptorily instruct the jury to return a verdict in favor of the defendants in this case.

It will be noticed that this motion was general, and the assignment of error is general, but we will treat the assignment, as asserting by implication, that there is no evidence to sustain the verdict, or that there is no material evidence, taking all the evidence in its most favorable light, and no conflict in the evidence whereby the minds of reasonable men might differ. And that there is no evidence on which to base any liability against the defendants.

The second and third assignments of error state that the Trial Judge was in error in charging the jury that plaintiff was relying on Sections 39 and 107 of the Ordinances of the City of Knoxville.

The court, in charging the jury, on which is now made the basis for assignments two and three, said:

"The plaintiff in the third count of his declaration in substance avers, and plaintiff's theory as therein set forth in substance is that the place aforesaid, within the corporate limits of the City of Knoxville, Tennessee, the defendants were violating the following provisions of an Ordinance of the City of Knoxville, in the particulars specified in these instructions, to-wit:

" 'Sec. 39'. It shall be unlawful for the operator of an automobile to stop, stand or park such vehicle in any of the following places, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic control sign or signal:

" 'Within twenty-five feet from the intersection of curb lines, or, if none, then within twenty feet of the intersection of property lines at an intersection, except at alleys.'

"The declaration avers that said provisions were violated in the following particulars:

"This portion of the said Ordinance was violated by defendants because of the manner in which they placed said taxicab with reference to the cross-walk and said intersection; that is, they left it at, or on the cross-walk, and within twenty-five feet of the curb line of the intersection."

"The lower court erred in giving in his charge of the jury Section 107 of the said Ordinance and plaintiff's theory with reference thereto, as follows, to-wit:"

" 'Sec. 107. No person having control or charge of a motor vehicle shall allow such vehicle to stand on any street unattended without first setting the brakes thereon and without turning the wheels of such vehicle to the curb or the side of the street or highway."

"That defendants violated said provision by negligently failing to turn the wheels of their taxicab to the curb or side of the street, but left it in the street far from the curb, headed in the wrong direction, and that plaintiff's alleged injuries were thus occasioned."

It is insisted, "that both of these sections were passed for the protection of pedestrians and other vehicles that might be injured or damaged by reason of the car parked on a street or highway getting loose and running away and thereby doing injury to persons and vehicles on the highway."

It is further insisted that said sections have no application and were not intended to protect passing vehicles on the street or highway.

The plaintiff is a citizen and resident of Fayetteville, Tennessee, and was connected with the publishing of the Fayetteville Observer. He was in Knoxville November 16, 1929, attending the Tennessee-Vanderbilt football game. Following the game, the plaintiff had gone to the residence of a Mr. Hartman, who lived on Cumberland Avenue in Knoxville; also, visiting in the Hartman home was Mr. J. S. Woodard, a citizen and resident of Fayetteville. Sometime in the early evening, the plaintiff left the Hartman home and went to the business section of the City of Knoxville. Mr. Woodard also left the Hartman home and went into the City. Wallace and Woodard did not go together, but both intended to spend the night at the Hartman home. About 11:30 Woodard left the Farragut Hotel, accompanied by Wallace. Woodard was driving a borrowed car. Wallace was in the car seated by Woodard. The evening or night of the accident was a rainy one, that is a slow, drizzling, misty rain was falling. Woodard and Wallace proceeded west from the uptown district on Cumberland Avenue. It appears that Mr. Hartman lived on the south side of Cumberland Avenue, his home fronting north, and west of his home was a driveway to his garage. Opposite of Hartman's home, 20th Street intersected with Cumberland Avenue, but 20th Street did not cross Cumberland Avenue. It extended north from the north curb of Cumberland Avenue.

Woodard had suggested to Wallace to be on the lookout for Hartman's home, so that they would not pass the home, or would be able to turn in at the Hartman driveway from Cumberland Avenue.

The defendants in operating their taxicab business had been engaged by Lee Davis, a Knoxville News Sentinel reporter, to convey him to the Fort-Sanders Hospital in Knoxville and the taxicab owned by the defendants and operated by Butler Julian had proceeded out West Cumberland Avenue to 19th Street and had there started up a steep hill which leads from Cumberland to the Hospital. After proceeding a short way up this hill the motor on the cab stalled and the passenger, Lee Davis, was allowed to alight from the same and proceed to the Hospital afoot. The cab was then backed by Julian into West Cumberland Avenue and then started coasting down Cumberland Avenue, which street has a grade of sufficient percentage to cause an automobile to coast in a westwardly direction. In doing this the motor of the cab was again started and the driver of the cab again turned from Cumberland and proceeded up 20th Street which street as hereinabove stated runs northwardly from West Cumberland Avenue and is parallel to 19th Street, upon which street the automobile had first stalled. 20th Street like 19th Street is a street of

considerable grade and the grade runs from Cumberland Avenue up as one proceeds up the street. Again after proceeding some little distance up 20th Street the cab stalled and again the driver, Butler Julian, allowed the cab to coast back down 20th Street incline and into West Cumberland Avenue and allowed the same to remain parked on the north side of West Cumberland Avenue with the headlights of the said cab facing east and also facing the on-coming westward traffic. The cab was not parked in next to the curb but was parked at an angle with the front of the same nearer the curbing on the north side of Cumberland Avenue than the rear. The evidence tends to show that the front of the taxicab was parked with its left front wheel some two and one-half feet from the curb, with its left rear wheel three or four feet from the curb and about even with the west curb line of 20th Street. No other cars were parked near defendant's taxicab. Julian, the driver, had telephoned for assistance, and then occupied his taxicab for several minutes before the accident.

Cumberland Avenue was a through street and a heavily traveled street. 20th Street was a lightly traveled street. It was about forty minutes from the time the taxicab went dead until the accident.

Woodard testified that as he proceeded westward down the street that through the drizzling rain he observed the brilliant headlights of the parked cab; that he was running at a speed of about fifteen miles an hour; that he could not see beyond the headlights and since there was no light on the rear of the cab did not know that the rear end of the same was extending farther into the street than the front of the cab, and directly in line with the route he was traveling; that the first thing he knew of the rear protruding into the street was when the collision occurred. No part of the car driven by Woodard struck the front of the parked cab and the collision occurred entirely by the right front wheel of the Woodard car striking the protruding rear end of the parked cab.

It is apparent that Woodard's car would have passed the taxicab with safety, had the taxicab's rear wheels been as near to the curb as its front wheels. The plaintiff, as a result of the collision between the car driven by Woodard and the taxicab, received a number of severe cuts about his head and ear. His right ear was cut through to the bone, severing his hearing canal. He was rushed to the hospital, lost much blood, and spent sixty days in the hospital. He had to incur large sums for medical and hospital bills. As there is no complaint now being made as to the amount of the judgment, we will not state further about this young man's injuries. He is 28 years of age, and it appears that both Woodard and Wallace were strictly sober the night of the accident.

The fact that the defendants' taxicab was parked on the wrong side of the street and in a diagonal line, with the front lights burning, but no rear lights, it was a dark, rainy night, and parked for forty minutes when the defendants could have relieved Julian, the driver, as shown by the proof, and if there was negligence on the part of Woodard, it would not be imputed to Wallace.

We are of the opinion that as to whose negligence was the proximate cause of the accident was a matter to be submitted to the jury.

The first assignment of error is overruled. As to the second and third assignments of error, the Trial Judge, in charging the jury, said:

The plaintiff in the third count of his declaration in substance avers, and plaintiff's theory as therein set forth in substance is that at the place aforesaid, within the corporate limits of the City of Knoxville, Tennessee, the defendants were violating the following provisions of an Ordinance of the City of Knoxville, in the particulars specified in these instructions, to-wit:

"Sec. 39. It shall be unlawful for the operator of an automobile to stop, stand or park such vehicle in any of the following places, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic control sign or signal:

"Within twenty-five feet from the intersection of curb line, or, if none, then within twenty feet of the intersection of property lines at an intersection, except at alleys."

The declaration avers that said provisions were violated in the following particulars:

This portion of the said Ordinance was violated by defendants because of the manner in which they placed said taxicab with reference to the cross-walk and said intersection; that is, they left it at, or on the cross-walk, and within twenty-five feet of the curb line of the intersection.

"Sec. 55. Except when necessary in obedience to traffic regulations or traffic signs or signals, the operator of a vehicle shall not stop, stand or park such vehicle in a roadway, other than parallel with the edge of the roadway, headed in the direction of traffic, and with the curb-side wheels of the vehicle within twelve inches of the edge of the roadway, except as provided in the following three paragraphs:"

That defendants violated said provision by stopping or parking their taxicab in said roadway without leaving it parallel with the edge of said roadway, headed in the direction of traffic, and parked it far from the curb and more than twelve inches from the curb.

"Sec. 107. No person having control or charge of a motor vehicle shall allow such vehicle to stand on any street unattended without first setting the brakes thereon and without turning the wheels of such vehicle to the curb or the side of the street or highway."

That defendants violated said provision by negligently failing to turn the wheels of their taxicab to the curb or side of the street, but left it in the street far from the curb, headed in the wrong direction, and that plaintiff's alleged injuries were thus occasioned.

The court also charged all of the theories of the defendants. It is defendants' insistence, and we quote from the brief of their able counsel, as follows:

"On account of the heavy business on this drizzly night, after the Vanderbilt game, the defendants had to press into service these old model type cabs that were purchased for city use only, without bright lights but only lights sufficient for city traffic, and, on account of the heavy business on this night, the driver of the cab was not able to get assistance before the accident occurred.

We respectfully insist that, under the circumstances, the driver of the cab had done all that it was humanly possible for him to do to prevent accidents. At the point where the accident happened the street was 45 feet wide from curb to curb. If the back end of the cab was out 4 feet from the curb, the right hand or part of the car extending furthest out into the street could not have been more than 10 feet, which left 35 feet on the other side of the cab for drivers of other vehicles to pass, or 12½ feet from the cab to the center of the street, and there was no excuse for the driver of the car in which plaintiff below was riding to run into the parked cab, and it could only have happened on account of the gross negligence of Woodard, and also the negligence of the plaintiff in not advising Woodard of the danger.

We most respectfully insist that there is no negligence shown on the part of the driver of the cab, and the court should have directed a verdict in favor of the defendants."

As heretofore stated, we are of the opinion that the minds of reasonable men might differ as to whether or not Woodard was guilty of negligence, or that the plaintiff was guilty of negligence, or whether or not the driver of the cab had done or performed all of the duties that were required of him to prevent an accident.

"The leaving of a car upon a highway for the making of absolutely necessary repairs may also in certain instances be negligent where it is so left as to unnecessarily obstruct the traffic and where no precautions are taken to signal approaching cars."

Edblad v. Brower, 227 N. W., 493 (Supreme Court of Minnesota Nov. 22, 1929).

In the case of Padgett v. Brangan, Ky., 15 S. W. (2d), 277, the Court of Appeals of Kentucky, said:

"In the case at bar if the jury accepted the testimony of Twet that the lights of appellant's car on the wrong side of the road deceived him as to the position thereof until too late to avoid the collision the conclusion properly could follow that appellant's negligence in stopping where he did proximately contributed to cause plaintiff's injury. That Twet's negligence also contributed thereto does not relieve appellant. The latter's car was still in a negligent position when the accident occurred and by that position efficiently contributed to produce it."

It is insisted as to assignments two and three that these Ordinances were not passed for the purpose of protecting traffic which ran into a parked car attended by the chauffeur or driver, and in support of these two assignments, counsel relies upon Adams v. Inn Company, 117 Tenn., 470, 101 S. W., 428, and Bristol Telephone Co. v. Weaver, 146 Tenn., 511, 243 S. W., 299.

In the latter case, the Supreme Court, speaking through Mr. Justice Hall, held that in an action for death by electrocution, though an ordinance requiring the insulation of electric wires was offered in evidence without objection, an instruction on the effect of this ordinance was error, there being no evidence that the place where decedent was electrocuted was within the corporate limits of the city.

It was further held that the Supreme Court can take judicial notice of a city and incorporated towns, but the Appellate Courts cannot take judicial notice of the location and boundaries of a city.

The rule announced in 146 Tennessee is not applicable in the instant case, for the record in the instant case shows that the declaration was read to a court and jury, and the plea of not guilty of the defendants, thereupon, the court made the following inquiry:

"May the court assume, for the purpose of its rulings and instructions to the jury that the various provisions of the City Ordinance set forth in plaintiff's declaration are correctly set forth therein?

BY MR. HARTMAN: "The plaintiff offers, if Your Honor Please, the traffic Ordinance of the City of Knoxville, and if Mr. Word doesn't care, I have just read them from the declaration and unless he wants them read again, I will treat offered and read."

BY MR. WORD: "I am not making any question of any introduction of the Ordinance because it is not certified to—I may later on object because the Ordinance doesn't apply."

BY THE COURT: "Can you agree that the accident if any, happened within or without the Corporate limits of the City of Knoxville?

BY MR. WORD: "Within the Corporate limits."

BY THE COURT: "Within or without the business district."

BY MR. WORD: "Without the business district."

In the case of Adams v. Inn Company, the Supreme Court speaking through Mr. Justice Shields in construing Chapter 178, Section 1 of the Acts of 1899, "requiring the keeper or proprietor of certain hotels or lodging houses to provide ropes or rope ladders for the escape of lodgers in case of fire does not impose this duty on the owner of a hotel operated by a lessee." The owner of the hotel building was sued by a guest who had been injured by a fire that destroyed the building. The owner did not operate the hotel, but had leased it to a party who was not sued.

The plaintiff also relied in the Inn Company case on a City Ordinance, which was broader than the Statute, but which Ordinance was authorized by the Charter of the City. The City Ordinance relied on in the Inn Company case imposed upon the owners of hotels, lodging houses, and certain other buildings the duty of placing fire escapes upon them. The Supreme Court held that this was a reasonable and valid police regulation.

And whether the plaintiff could have reached a rope ladder and made his exit safely, or whether the failure to attach the fire escapes was the proximate cause of the injury, was a question for the jury, and what would be a proper equipment of fire escapes and proper compliance with the City Ordinance requiring them to be attached by the owner, were questions for the jury. There had been a directed verdict in the Adams v. Inn Company case. There was a reversal by the Supreme Court.

We are of the opinion that to follow the defendants' insistence as to these Ordinances would be giving the Ordinances relied on a too narrow construction. These Ordinances were evidently passed to protect the users of all the City Streets of Knoxville, and in our opinion the Ordinances are not limited to the class of people designated by the defendants.

We find no error in submitting the Ordinances by the Trial Judge to the jury, and the second and third assignments of error are overruled.

By the fourth assignment of error, the defendants insist that the court erred in not charging the jury a certain special request offered by the defendants. The special request asked the court to charge the jury that the defendants were not liable for the violation of City Ordinances by reason of Section 72 of the Traffic Ordinance which is set out in the special request. This special request was properly refused for two reasons. In the first place, as shown by the record, the Trial Court asked counsel in what part of the City did this accident

occur, in the business section or the residential section, or within or without the business district. The answer was without the business district.

Section 72 submitted in the special request states that "no person shall park or leave standing a vehicle on any highway, not within a business or resident district." Furthermore, Section 72 was never introduced by the defendants. The court had asked, for the purpose of its rulings and instructions to the jury, "were the various provisions of the City Ordinance set out in the plaintiff's declaration correct?" Counsel for the defendants answered that no question was made on any introduction of the Ordinance because it was not certified to, but later there might be an objection because the Ordinance doesn't apply.

When this special request was presented, the Court announced that it desired to confer with counsel for the respective parties, thereupon the Trial Judge and the attorneys retired from the courtroom, and the following took place:

THE COURT: "Said section of the City Ordinance was not even referred to during the introduction of the evidence or during the argument of the motion for peremptory instructions or during the presentation of the case to the Jury. Plaintiff has had no opportunity to reply to it, and the court desires to hear Counsel for the respective parties as to whether or not said special Request should be granted or refused under the circumstances."

The court did hear the views of the attorneys for the respective parties with reference thereto, before said request was refused.

Section 72 of the Ordinance relied on by the defendants was not introduced by the defendants when the plaintiff introduced the Ordinances read in his declaration. They did not admit all the Ordinances of the City of Knoxville or all the Traffic Ordinances of the City of Knoxville, and the special request was properly refused.

It results that all the assignments of error are overruled and disallowed. The judgment of the lower Court is affirmed. The plaintiff will recover of the defendants the amount of the judgment rendered in the lower court, with interest thereon from the date of its rendition, and all the costs of the cause, for which execution will issue. Execution will issue against the defendants and their sureties on appeal bond for the costs of the cause, including the appeal.

Heiskell and Senter, JJ., concur.