# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### June 21, 2016 Session

## ALLEN RIGGS v. RICHARD B. WRIGHT, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT00445014    Felicia Corbin Johnson, Judge**

———————————————————

**No. W2015-00677-COA-R3-CV – Filed July 7, 2016**

———————————————————

The plaintiff filed this case against an adult defendant and his parents, after the adult defendant allegedly attacked the plaintiff. The trial court granted parents' motion to dismiss, concluding that no special relationship existed between the adult defendant and his parents that would confer a duty on parents to control the adult defendant, a guest in parents' home. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which W. NEAL MCBRAYER, and KENNY ARMSTRONG, JJ., joined.

C. Wesley Fowler and Jonathan O. Richardson, Memphis, Tennessee, for the appellant, Allen Riggs.

Bradford D. Box and J. Caleb Meriwether, Jackson, Tennessee, for the appellees, Larry F. Wright, Sr., and Marianne D. Wright.

## OPINION

### Background

On October 22, 2014, Plaintiff/Appellant Allen Riggs filed a complaint for damages against Defendant Richard B. Wright ("Mr. Wright") and Defendants/Appellees Larry F. Wright, Sr., and Marianne D. Wright (together, "Appellees"). According to the complaint, on August 9, 2014, Mr. Wright attacked Mr. Riggs on the street outside his home causing Mr. Riggs injuries that resulted in "surgical intervention." At the time, Mr. Wright, the adult son of Appellees, was residing in Appellees' home next door to Mr. Riggs's home. The complaint alleged that because Mr. Wright had a history of violence that was known to

Appellees, Appellees had a "duty to exercise reasonable supervision and care to control" Mr. Wright. Mr. Riggs contended that in allowing Mr. Wright to attack him, Appellees breached their duty of care and were, therefore, negligent. The complaint sought compensatory and punitive damages, as well as injunctive relief, against Mr. Wright and Appellees.

Mr. Wright filed an answer to the complaint on December 10, 2014, alleging that the incident was the result of Mr. Riggs's own actions and that Mr. Wright was acting in self-defense. Mr. Wright also alleged that he

> suffers from an illness that may cause him to perceive things differently from others. This illness may prevent him from determining whether a threat exists or not; and further, may cause Mr. Wright to have a heightened perception of a threat. This difficulty may prevent Mr. Wright from distinguishing right and wrong.

Mr. Wright denied, however, that he had a history of violence.

On January 8, 2015, Appellees filed a motion to dismiss the complaint against them for failure to state a claim upon which relief can be granted. In their motion and accompanying memorandum, Appellees argued that they could not be held liable for the alleged intentional acts of their adult child, citing **Nichols v. Atnip**, 844 S.W.2d 655 (Tenn. Ct. App. 1992). Mr. Riggs filed a response to the motion to dismiss on February 4, 2015, arguing that because Appellees knew of Mr. Wright's propensity toward violence, a special relationship existed which created "an affirmative duty [on the part of the Appellees] to act for the protection of another party."

The trial court held a hearing on the motion to dismiss on February 13, 2015. The trial court orally ruled in favor of Appellees and, thereafter, both parties submitted proposed orders to the trial court. On March 11, 2015, the trial court entered an order granting the motion to dismiss in favor of Appellees. The trial court specifically ruled that no special relationship existed between Appellees and Mr. Wright. Because the parent-adult child relationship did not give rise to liability of parents for the intentional acts of their children, the trial court determined that Appellees owed no duty to protect Mr. Riggs from Mr. Wright. Finding that there was no just reason for delay, the trial court designated its ruling as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. Mr. Riggs thereafter filed this appeal.[1]

---

[1] On September 1, 2015, this Court dismissed Mr. Riggs's appeal after concluding that his notice of appeal was filed more than thirty days after the March 11, 2015 entry of the trial court's order. *See **Riggs v. Wright**, No. W2015-00677-COA-R3-CV, 2015 WL 5168483, at \*1 (Tenn. Ct. App. Sept. 1, 2015), *vacated* (Tenn. Jan. 14, 2016). Mr. Riggs filed an application for permission to appeal to the Tennessee Supreme Court,

## Issue Presented

Mr. Riggs raises one issue, which is taken from his appellate brief:

> Whether the trial court erred by dismissing Appellant's claims against Appellees pursuant to Rule 12.02(6) based solely on the trial court's determination that Appellees owed no duty to Appellant, despite allegations in the Complaint that Appellees had actual knowledge of the danger presented by their mentally unstable houseguest and that his violent actions were reasonably foreseeable to Appellees.

## Standard of Review

As our supreme court explained:

> A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. ***Highwoods Props., Inc. v. City of Memphis***, 297 S.W.3d 695, 700 (Tenn. 2009); ***Willis v. Tenn. Dep't of Corr.***, 113 S.W.3d 706, 710 (Tenn. 2003); ***Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.***, 986 S.W.2d 550, 554 (Tenn. 1999); ***Sanders v. Vinson***, 558 S.W.2d 838, 840 (Tenn. 1977). The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. ***Leggett v. Duke Energy Corp.***, 308 S.W.3d 843, 851 (Tenn. 2010); ***Trau-Med of Am., Inc. v. Allstate Ins. Co.***, 71 S.W.3d 691, 696 (Tenn. 2002); ***Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.***, 878 S.W.2d 934, 938 (Tenn. 1994); ***Cornpropst***

---

which was eventually granted on January 14, 2016. The Tennessee Supreme Court vacated the judgment of the Court of Appeals, concluding that the trial court's order was not effective pursuant to Rule 58 of the Tennessee Rules of Civil Procedure until a certificate of service was added to the order a day after its entry by the trial court. Because Mr. Riggs's notice of appeal was, therefore, timely, the Tennessee Supreme Court remanded this matter to us for reconsideration of Mr. Riggs's appeal.

In their appellate brief, Appellees again assert that this Court lacks subject matter jurisdiction over this appeal because Mr. Riggs's notice of appeal was untimely. The Tennessee Supreme Court's determination of the timeliness of Mr. Riggs's notice of appeal is the law of the case in this remand, however, and this Court is not at liberty to revisit or overturn the Tennessee Supreme Court's clear holding. *See generally **Memphis Pub'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.***, 975 S.W.2d 303, 306 (Tenn. 1998) ("The phrase 'law of the case' refers to a legal doctrine which generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case."). Accordingly, we will proceed to consider the substantive merits of Mr. Riggs's appeal.

***v. Sloan***, 528 S.W.2d 188, 190 (Tenn. 1975) (*overruled on other grounds by **McClung v. Delta Square Ltd. P'ship***, 937 S.W.2d 891, 899–900 (Tenn. 1996)). A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" ***Brown v. Tenn. Title Loans, Inc.***, 328 S.W.3d 850, 854 (Tenn. 2010) (quoting ***Freeman Indus., LLC v. Eastman Chem. Co.***, 172 S.W.3d 512, 516 (Tenn. 2005)); *see **Edwards v. Allen***, 216 S.W.3d 278, 284 (Tenn. 2007); ***White v. Revco Disc. Drug Ctrs., Inc.***, 33 S.W.3d 713, 718 (Tenn. 2000); ***Holloway v. Putnam Cnty.***, 534 S.W.2d 292, 296 (Tenn. 1976).

In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" ***Tigg v. Pirelli Tire Corp.***, 232 S.W.3d 28, 31–32 (Tenn. 2007) (quoting ***Trau-Med***, 71 S.W.3d at 696); *see **Leach v. Taylor***, 124 S.W.3d 87, 92–93 (Tenn. 2004); ***Stein v. Davidson Hotel Co.***, 945 S.W.2d 714, 716 (Tenn. 1997); ***Bellar v. Baptist Hosp., Inc.***, 559 S.W.2d 788, 790 (Tenn. 1978); *see also **City of Brentwood v. Metro. Bd. of Zoning Appeals***, 149 S.W.3d 49, 54 (Tenn. Ct. App. 2004) (holding that courts "must construe the complaint liberally in favor of the plaintiff by . . . giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts"). A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." ***Crews v. Buckman Labs. Int'l, Inc.***, 78 S.W.3d 852, 857 (Tenn. 2002); *see **Lanier v. Rains***, 229 S.W.3d 656, 660 (Tenn. 2007); ***Doe v. Sundquist***, 2 S.W.3d 919, 922 (Tenn. 1999); ***Pemberton v. Am. Distilled Spirits Co.***, 664 S.W.2d 690, 691 (Tenn. 1984); ***Fuerst v. Methodist Hosp. S.***, 566 S.W.2d 847, 848 (Tenn. 1978); ***Ladd v. Roane Hosiery, Inc.***, 556 S.W.2d 758, 759–60 (Tenn. 1977). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo. ***Brown***, 328 S.W.3d at 855; ***Stein***, 945 S.W.2d at 716.

***Webb v. Nashville Area Habitat for Humanity, Inc.***, 346 S.W.3d 422, 426 (Tenn. 2011).

**Discussion**

- 4 -

In order to determine whether the trial court correctly dismissed the claim against Appellees, it is first important to note what claims are not raised in this case. First, we note that Mr. Riggs does not raise a claim for negligent entrustment, presumably because the facts of this case do not involve the entrustment of a chattel to Mr. Wright. *See Nichols v. Atnip*, 844 S.W.2d 655 (Tenn. Ct. App. 1992) (stating that "an entrustment of a chattel" is an essential element of negligent entrustment claim). Mr. Riggs has also not alleged an action against the Appellees under a premises liability theory, as Mr. Riggs's injury did not occur on Appellees' property. *See Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014) (requiring that the injury be caused by a "dangerous condition on the premises"). Instead, Mr. Riggs's claim involves only general negligence—he asserts Appellees breached a duty "to exercise reasonable supervision and care to control" Mr. Wright that resulted in Mr. Riggs's injuries.[2]

A claim for negligence cannot succeed in the absence of any of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, cause. *Green v. Roberts*, 398 S.W.3d 172, 176–77 (Tenn. Ct. App. 2012) (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)). Duty, the first element of the claim, is the legal obligation a defendant owes to a plaintiff to conform to the reasonable person standard of care in order to protect against unreasonable risks of harm. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). Whether a defendant owes a duty to a plaintiff in any given situation is a question of law for the court. *Bradshaw*, 854 S.W.2d at 869.

The trial court granted Appellees' motion to dismiss the claims against them after determining that the facts, even if taken as true, did not give rise to a duty on the part of Appellees. "Duty is a legal obligation to conform to a reasonable person standard of care in order to protect others against unreasonable risks of harm." *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008) (citing *Burroughs v. Magee*, 118 S.W.3d 323, 328–29 (Tenn. 2003)); *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000)). Generally speaking, "persons have a duty to others to refrain from engaging in affirmative acts that a reasonable person 'should recognize as involving an unreasonable risk of causing an invasion of an interest of another' or acts 'which involve[] an unreasonable risk of harm to another.'" *Satterfield*, 266 S.W.3d at 355 (quoting Restatement (Second) of Torts §§ 284, 302, at 19, 82 (1965)).

---

[2] Despite this clear allegation, counsel for Mr. Riggs stated at the hearing before the trial court on the Appellees' motion to dismiss that "this is not a negligent supervision case." Like the Appellees, we are puzzled as to what other claim is implicated by the allegations in Mr. Riggs's complaint other than negligent supervision. No other claim is specifically referenced by Mr. Riggs in this Court or in the trial court.

The general duty of care, however, does not include an affirmative duty to act for the protection of a third party "'unless the defendant 'stands in some special relationship to either the person who is the source of the danger, or to the person who is foreseeably at risk from the danger.'" *Biscan v. Brown*, 160 S.W.3d 462, 478–79 (Tenn. 2005) (quoting *Turner v. Jordan*, 957 S.W.2d 815, 818 (Tenn. 1997)). Thus, the special relationship doctrine "carves out an exception" to the general rule that there is no duty to act for the protection of another. *Biscan*, 160 S.W.3d at 479 (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 871 (Tenn. 1993)). Stated another way, the doctrine "recognizes that 'certain socially recognized relations exist which constitute the basis for such legal duty.'" *Biscan*, 160 S.W.3d at 479 (quoting *Bradshaw*, 854 S.W.2d at 871). Accordingly, if the defendant "stands in a special relationship" to either the source of the danger or the an individual "who is foreseeably at risk from the danger, then the individual assumes an affirmative duty to exercise reasonable care to either control the danger or protect the vulnerable." *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 819 (Tenn. 2008) (citing *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 551 (Tenn. 2005)). The Tennessee Supreme Court noted that Tennessee courts "have previously recognized such special relationships to include those of innkeeper and guest, common carrier and passenger, possessors of land and guests, social host and guest, and those who have custody over another." *Downs*, 263 S.W.3d at 819 (citing *Bradshaw*, 854 S.W.2d at 872) (imposing liability on physician for failing to warn wife of patient of the foreseeable risks emanating from a patient's illness"); *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 899–900 (Tenn. 1996) (imposing "a duty upon businesses to take reasonable measures to protect their customers from foreseeable criminal attacks); *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 860 (Tenn.1985) (holding that a social host had a duty to render reasonable aid to his guest when the guest was injured and rendered unconscious); Restatement (Second) of Torts § 314A (listing the relationships described by the *Downs* Court). This Court has indicated, however, that these recognized special relationships are "not exhaustive." *Main St. Mkt., LLC v. Weinberg*, 432 S.W.3d 329, 337 (Tenn. Ct. App. 2013).

Consequently, in order for the Appellees to be liable for the actions of Mr. Wright, some special relationship must exist between either Appellees and Mr. Wright or Appellees and Mr. Riggs that places an affirmative duty on the Appellees to act for the protection of Mr. Riggs. The trial court in this case determined that no special relationship existed based upon this Court's opinion in *Nichols v. Atnip*, 844 S.W.2d 655 (Tenn. Ct. App. 1992). In *Nichols*, the plaintiff was injured in an automobile accident by the defendant, a young adult. Evidence showed that the young man's parents were fully aware of his "consistent, habitual" substance abuse, including the fact that the young man had previously been in three car accidents involving property damage, at least one of which resulted in a driving while intoxicated charge. *Id.* at 658. Despite this knowledge, the young man's parents did not prevent him from driving, and instead sometimes helped him pay insurance and purchase tires and gasoline. *Id.* Eventually, the young man was involved in an accident that resulted in

the death of the other driver and one passenger. *Id.* at 658–59. Another passenger was seriously injured. *Id.* at 659. The young man's blood alcohol level at the time of the accident was well above the legal limit. *Id.* The young man was criminally charged, and he pleaded guilty to two counts of vehicular homicide by intoxication and one count of aggravated assault. *Id.*

Thereafter, the young man's victim's parents ("plaintiffs") filed a civil action against the young man and his own parents, alleging claims of negligent entrustment and negligent supervision as to the parents. *Id.* The trial court eventually granted the young man's parents' motion to dismiss the complaint for failure to state a claim upon which relief can be granted. *Id.* The Court of Appeals affirmed the trial court's dismissal of both the negligent entrustment and negligent supervision claims. *Id.* at 660–61.

With regard to the general negligence claim, the Court of Appeals ultimately concluded that parents had no duty to supervise their adult son that would give rise to a negligent supervision claim because no parent-adult child special relationship was recognized by Tennessee law. As we explained:

> [P]laintiffs have not pointed to any "special relation" envisioned by Restatement (Second) of Torts § 315(a) (1964) between the Atnips and their own son that would have required them to control his conduct. These special relations include those between parents and their minor children, masters and their servants, and persons having custody of persons with dangerous propensities. . . .
> Restatement (Second) of Torts § 316 (1964) is not applicable to this case because Robert Atnip was a fully emancipated adult when the accident occurred. The family relationship alone is not a "special relation" because it does not necessarily carry with it the capacity or authority to control. *Ollice v. Pugh*, App. No. 87–7–II, slip op. at 7, 12 T.A.M. 27–7, 1987 WL 4902 (Tenn. Ct. App. May 27, 1987) (wife had no duty to control husband); *Neale v. Wright*, 322 Md. 8, 585 A.2d 196, 201 (1991) (wife-husband); *Kaminski v. Town of Fairfield*, 216 Conn. 29, 578 A.2d 1048, 1052 (1990) (parent-adult child); *Reinert v. Dolezel*, 147 Mich.App. 149, 383 N.W.2d 148, 151 (1986) (parent-adult child); *Alioto v. Marnell*, 402 Mass. 36, 520 N.E.2d 1284, 1286 (1988) (parent-adult child).

*Nichols*, 844 S.W.2d at 662.[3]

The Court of Appeals further concluded that the parents had no authority to control their adult's son's use of his own car:

> Finally, the plaintiffs have not demonstrated that the [the parents'] had the power or the means to control their son's car directly. Viewing the evidence in the light most favorable to the plaintiffs, the [parents] occasionally exercised control over their son's use of his car between the time he obtained his driver's license and the accident. There is no indication that they exercised, or were able to exercise, control over their son's car after he became an adult. The fact that they might have prevented their son from driving on prior occasions does not give rise to a continuing duty to control their adult son's driving.

*Nichols*, 844 S.W.2d at 662. The parents of the young man were, therefore, not liable for the injuries he allegedly caused.

Thus, the *Nichols* Court held that neither the existence of a parent-adult child relationship nor prior supervision or restraint of an adult child give rise to a special relationship in which a duty to supervise the adult child exists. Mr. Riggs apparently concedes that the fact that Appellees are the parents of Mr. Wright is insufficient to establish a special relationship. Indeed, the facts in *Nichols* are substantially similar to the allegations in this case: that despite knowledge of their adult son's allegedly dangerous propensities, the parents did nothing to prevent their son from harming a third party. Mr. Riggs argues, however, that the question of whether a special relationship exists may not be resolved solely on the basis of the decision in *Nichols* but instead must be considered through the lens of the Tennessee Supreme Court's decision in *Biscan v. Brown*, 160 S.W.3d 462 (Tenn. 2005).

In *Biscan*, the defendant hosted a party for his adult daughter that was attended by minors. The defendant host did not serve alcohol at the party, but "fully expected many of the minor guests to bring and consume alcohol, which is precisely what happened." *Id.* at 467. The host made some of the guests aware of his rule that those guests who were drinking would be required to stay the night rather than drive home. The defendant host "walked around and patrolled the party and was aware that some of the guests had brought beer, he

---

[3] The *Nichols* Court also noted that the Court in a prior case specifically declined to recognize another special relationship, the relationship between guest and host. *See Id.* (citing *Wilkerson v. Altizer*, 845 S.W.2d 744, 748 (Tenn. Ct. App. 1992)). In *Biscan v. Brown*, 160 S.W.3d 462 (Tenn. 2005), however, the Tennessee Supreme Court held that a social host stands in a special relationship to his minor guests, where the host had the means or ability to control his guests' conduct. *Id.* at 481 (discussed in detail, *infra*).

made no attempt to enforce the rule that guests who had consumed alcohol stay overnight." The minor plaintiff left the party with another intoxicated minor guest of the party, where she was "severely injured in a single-car automobile accident." Both the minor plaintiff and the minor driver had blood alcohol levels indicating alcohol consumption. The minor plaintiff and her father sued the driver and the defendant host. The case went to trial and a verdict was rendered in favor of the plaintiffs against both the driver and the defendant host. The Court of Appeals affirmed the trial court in all respects. *Id.*

On appeal to the Tennessee Supreme Court, the defendant host argued that the trial court erred in denying his motion for summary judgment on the issue of duty. The ***Biscan*** Court affirmed the trial court, however, and concluded that a special relationship existed between the defendant host and his minor guests that would give rise to a duty to take affirmative action to protect the minor plaintiff from harm caused by the minor driver.

The ***Biscan*** Court first reaffirmed the long-standing rule that the general duty of care does not include an affirmative duty to act for the protection of a third party, "unless the defendant 'stands in some special relationship to either the person who is the source of the danger, or to the person who is foreseeably at risk from the danger.'" *Id.* at 478–79 (quoting ***Turner***, 957 S.W.2d at 818). The ***Biscan*** Court described the special relationship doctrine as a product of "society's contemporary policies and social requirements." ***Biscan***, 160 S.W.3d at 479 (quoting ***Bradshaw***, 854 S.W.2d at 870). Accordingly, in order to determine whether a duty exists in a given situation, the ***Biscan*** Court directed that courts "weigh public policy considerations, which 'are crucial in determining whether a duty of care existed in a particular case.'" ***Biscan***, 160 S.W.3d at 479 (quoting ***Burroughs v. Magee***, 118 S.W.3d 323, 329 (Tenn. 2003)). Public policy, however, is not the only consideration:

> In deciding whether a duty was owed to act for the protection of a third party, we will also consider whether the plaintiff's injuries and the manner in which they occurred were reasonably foreseeable. ***Burroughs***, 118 S.W.3d at 329. In ***Bradshaw***, for example, we concluded that a physician owes a duty to the immediate family members of a patient to warn them of possible exposure to the source of the patient's illness, even in the absence of a physician-patient relationship with the immediate members of the family. 854 S.W.2d at 872. Our holding rested on the fact that it was highly foreseeable that the patient's wife would also contract the disease which killed the patient. *Id.* Similarly, in Burroughs, we held that a physician owed a duty to a third party as a member of the "motoring public" to warn his patient that medication could impair the patient's driving ability because the patient's medical history

and the effects of medication made the third party's injury foreseeable. 118 S.W.3d at 332. In *Estate of Amos v. Vanderbilt Univ.*, 62 S.W.3d 133, 138 (Tenn. 2001), this Court held that the defendant hospital owed a duty to the patient's husband and to the general public to inform the patient that she had HIV because it was foreseeable that identifiable third parties would be at risk for exposure. In contrast, in *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 433 (Tenn.1994), we held that the defendant doctor, pharmacy, and pharmaceutical company had no duty to a third party plaintiff to warn of the risk to others from the patient's medication because it was not foreseeable that the third party would mistake the medication for aspirin.

*Biscan*, 160 S.W.3d at 479.

The Tennessee Supreme Court noted that an emphasis on foreseeability "dovetail[ed]" with the general duty analysis in non-third-party cases, which requires courts to consider

the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

*Biscan*, 160 S.W.3d at 480 (quoting *McCall*, 913 S.W.2d at 153). Thus, the Tennessee Supreme Court generally held that the question of whether a duty to act is present involves consideration of two elements: (1) public policy; and (2) foreseeability. *See also Main St. Mkt., LLC v. Weinberg*, 432 S.W.3d 329, 337 (Tenn. Ct. App. 2013) ("[W]hen determining whether a special relationship exists so as to create an affirmative duty to act for the protection of a third party, 'we will weigh public policy considerations' and 'also consider whether the plaintiff's injuries and the manner in which they occurred were reasonably foreseeable.'") (quoting *Biscan v. Brown*, 160 S.W.3d 462, 479 (Tenn. 2005)).

The Tennessee Supreme Court concluded that the public policy considerations favored imposing a duty for the protection of minors because minors are generally prohibited from consuming alcohol. Indeed, the Court recognized that "imposing a duty to act for the protection of minors" was appropriate, even "where such a duty might be absent when dealing with adults." The Court also determined that it was foreseeable to the defendant host that the minor guests would drink and drive or ride with a guest who had been drinking. *Biscan*, 160 S.W.3d at 480. The *Biscan* Court held, however, that "in the total absence of the

- 10 -

means or ability to control his guests [the defendant host] would not have a special relationship to them." ***Id.*** at 481. The Court concluded, however, that: "An adult host who is 'in charge' of a party held for minors, however, certainly has some ability to control the conduct of his guests" and that the defendant host had in fact exercised some control over minor party guests in the past. ***Id.***

There can be no question that no special relationship exists between Appellees and Mr. Riggs so as to create a duty to protect him from harm occurring adjacent to Appellees' property. Even if we were to assume *arguendo* that harm was foreseeable in this situation, the public policy considerations simply do not allow us to extend Appellees' duty to take affirmative protective action so far as to encompass Mr. Riggs. Here, Mr. Riggs was not injured on Appellees' property, but on public property adjacent to both Appellees' and Mr. Riggs's property. Unlike the guests in ***Biscan***, Mr. Riggs is not a minor, and he was not allowed to engage in illegal and dangerous behavior on Appellees' property with the Appellees' full knowledge. To recognize a special relationship in this case, without more, would be to make homeowners insurers of their neighbors' safety, an unreasonable burden. Thus, there can be no special relationship between Appellees and Mr. Riggs that imposes on them an affirmative duty to act for the protection of Mr. Riggs.

Mr. Riggs argues, however, that a special relationship exists between Appellees and Mr. Wright because Appellees were aware of Mr. Wright's allegedly dangerous propensities. Indeed, the complaint in this case contains the following allegations:

> [Mr.] Wright has a history of violence prior to the incident described herein and such history is known by [Appellees].
>
> * * *
>
> [Appellees] knew or should have known of [Mr.] Wright's violent history and/or tendencies.
>
> [Appellees] had a duty to exercise reasonable supervision and care to control [Mr.] Wright and prevent him from harming others.

We take these allegations as true for purposes of Appellees' motion to dismiss. *See **Webb v. Nashville Area Habitat for Humanity, Inc.***, 346 S.W.3d 422, 426 (Tenn. 2011).[4] Given Mr. Wright's alleged dangerous propensities, Mr. Riggs argues that it was foreseeable to Appellees that Mr. Wright would injure him.

---

[4] Mr. Riggs also points to Mr. Wright's own admission in his answer that he suffers from a mental illness. Nothing in Mr. Wright's answer, however, alleges that Appellees were aware of Mr. Wright's illness. In addition, Mr. Wright's admissions do not operate as an admission of the Appellees, as they did not join in his answer.

- 11 -

In their appellate brief, Appellees do not specifically dispute that the harm in this case was foreseeable. Given the lack of dispute, we assume *arguendo* that, at the motion to dismiss stage, Mr. Riggs has alleged sufficient facts from which to conclude that the harm involved was foreseeable. We note, however, that:

> [F]oreseeability alone "is not, in and of itself, sufficient to create a duty." *Satterfield*, 266 S.W.3d at 366. Rather, when a minimum threshold of foreseeability is established, courts must engage in "an analysis of the relevant public policy considerations," *id.* at 364–65, to determine whether a duty enforceable in tort must be imposed.

*Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 365-66 (Tenn. 2009). Furthermore, we must also consider whether Appellees had "the means and ability to so control the conduct of [Mr. Wright]." *Lett v. Collis Foods, Inc.*, 60 S.W.3d 95, 100 (Tenn. Ct. App. 2001) (citing *Newton v. Tinsley*, 970 S.W.2d 490, 493 (Tenn. Ct. App. 1997) ("[I]n order for the duty to control a third party's conduct to arise, the actor must have the means and ability to control the third party.")).

Given the totality of the circumstances, we conclude that public policy does not favor finding a special relationship between Appellees and Mr. Wright in this case. First, we note that despite Mr. Riggs's efforts to distance this case from *Nichols*, the facts in *Nichols* are highly analogous to this case. The *Nichols* Court held that no special relationship existed because a family relationship between parties "does not necessarily carry with it the capacity or authority to control." *Nichols v. Atnip*, 844 S.W.2d 655, 662 (Tenn. Ct. App. 1992). In *Nichols*, we concluded that that the parents had no ability to control their adult son, despite the fact that they "occasionally exercised control over their son's use of his car between the time he obtained his driver's license and the accident." *Id.* Likewise in this case, nothing in the complaint alleges or implies that the Appellees had the ability to control Mr. Wright. In a similar case, *Newton v. Tinsley*, 970 S.W.2d 490 (Tenn. Ct. App. 1997), this Court likewise held that the marital relationship between the parties did not confer upon wife the ability to control her husband's conduct, despite the fact that wife knew her husband was being treated for mental issues and that he was agitated with the victim immediately prior to husband's attack. *Id.* at 493. The Court of Appeals declined to find a special relationship between the parties, even though, presumably, like the parties in this case, the couple lived in the same home. *Id.* In reaching this decision, the Court expressly ruled that wife did not have the ability to control her husband, as she was not husband's guardian or custodian. *Id.* Here, it is likewise undisputed that Appellees were not the guardians, conservators, or custodians of Mr. Wright at the time of the alleged attack.

At oral argument, however, counsel for Mr. Riggs argued that the allegation in the complaint that Appellees had a "duty . . . to control" Mr. Wright is sufficient to show that

Appellees had the ability to control their adult son. Respectfully, we cannot agree. First, we note that although the ability to control the tortious actor is an essential element in determining whether a special relationship exists, and therefore whether there was a duty to take affirmative action, the terms duty and ability are not necessarily synonymous. Moreover, the question of whether Appellees had a duty to control Mr. Wright is a question of law, rather than a factual question. *See* **Bradshaw v. Daniel**, 854 S.W.2d 865, 869 (Tenn. 1993) ("The existence or nonexistence of a duty owed to the plaintiff by the defendant is entirely a question of law for the court.") (citing **Glenn v. Conner**, 533 S.W.2d 297, 302 (Tenn. 1976)). This Court need not consider either the inferences to be drawn from the facts or the plaintiff's legal conclusions as true. *See* **Riggs v. Burson**, 941 S.W.2d 44, 48 (Tenn. 1997) (citing **Glenn v. Conner**, 533 S.W.2d 297, 302 n.4 (Tenn. 1976)). As such, our consideration of the issue of Appellees' duty is not limited by Mr. Riggs' assertion that they owed one.

We also cannot agree that the relationship of Appellees and Mr. Wright as homeowner and houseguest involves a special relationship sufficient to give rise to a duty to control in this case. "[T]he duty to aid or protect another will be imposed only in relationships involving some degree of dependence or mutual dependence." **Newton v. Tinsley**, 970 S.W.2d 490, 493 (Tenn. Ct. App. 1997). The relationship between adult guest and host typically does not involve the type of dependence implicated by the special relationship doctrine. Furthermore, nothing in the complaint alleges that Mr. Wright was in any way dependent on Appellees in this particular case. Indeed, although *Restatement (Second) of Torts* § 318 has never been adopted by this Court, we note that the landowner-licensee special relationship described therein only imposes liability upon a landowner for the actions of his or her guest where the landowner is "present" and "knows or has reason to know that he has the ability to control the third person." As the comment explains, application of this section is limited to a situation where the landowner "is present when . . . the activity [is] being carried on with his permission, and when therefore, he has not only the ability to control the conduct of the third person as possessor, but also the opportunity to do so." *Restatement (Second) of Torts* § 318, cmt. b. There is no allegation in the complaint at issue that the Appellees were present when Mr. Wright allegedly attacked Mr. Riggs; accordingly, the complaint fails to allege sufficient facts from which this Court could conclude that Appellees had the opportunity to prevent the harm when it occurred. Under these circumstances, we decline to apply the special relationship doctrine to the relationship between Appellees, as homeowner, and Mr. Wright, as adult house guest.

We also conclude that the public policy factors outlined in **Biscan** favor no special relationship in this case. *See generally* **Biscan**, 160 S.W.3d at 480 (quoting **McCall**, 913 S.W.2d at 153). First, we note that there is social value in allowing parents' adult children to reside with them without imposing liability on the parents for the adult child's actions, particularly where there is no evidence that the parents had the means or ability to control

their adult child.[5] In addition, the rule suggested by Mr. Riggs is not entirely feasible or desirable, as it would essentially result in parents being the insurers for their adult children's actions while in the parents' homes. Moreover, Mr. Riggs's proposed rule regarding homeowners and houseguests would require that homeowners be liable for injuries caused by their adult guests that not only occurred on their property, but also off their property. Indeed, at oral argument, counsel for Mr. Riggs declined to delineate how far such a duty of control would extend, other than to the owner of the property directly adjacent to Appellees' property. It is important to emphasize, however, that the alleged injury did not take place on Mr. Riggs's property, but on public property adjacent thereto. To hold that Appellees had a duty to control Mr. Wright from committing injury to those on adjacent property would not only extend to neighboring homeowners, but also to any individual on the public thoroughfare passing by Appellees' property. Finally, we also note that this case involves only adults, rather than minors. As the ***Biscan*** Court noted, while policy considerations may create a duty for adults to act for the protection of minors, such is not necessarily the case "when dealing with adults." ***Biscan***, 160 S.W.3d at 480. Given the social utility of the Appellees action in this case, as well as the lack of allegations concerning Appellees' ability to control Mr. Wright, no special relationship has been shown to exist in this case that would support liability against Appellees. The trial court's ruling is, therefore, affirmed.

### Conclusion

The judgment of the Shelby County Circuit Court is affirmed. Costs of this appeal are taxed to Appellant Allen Riggs, and his surety.

_____
J. STEVEN STAFFORD, JUDGE

---

[5] We also note that the situation wherein adult children live with their parents is largely on the rise. According to a 2013 analysis of U.S. Census Data, the number of young adults ages 18 to 34 living with their parents climbed to over 32% in 2014, eclipsing the number of young adults married or cohabitating with a partner in their own home for the first time in 130 years. Richard Fry, *For First Time in Modern Era, Living With Parents Edges Out Other Living Arrangements for 18- to 34-Year-Olds*, PEW RESEARCH CENTER, May 24, 2016, at 1, *available at* http://www.pewsocialtrends.org/2016/05/24/for-first-time-in-modern-era-living-with-parents-edges-out-other-living-arrangements-for-18-to-34-year-olds/; *but see* Richard Fry, *A Rising Share of Young Adults Live in Their Parents' Home*, PEW RESEARCH CENTER, August 1, 2013, at 1, *available at* http://www.pewsocialtrends.org/2013/08/01/a-rising-share-of-young-adults-live-in-their-parents-home/ (noting that 36% of young adults ages 18 to 31 lived with their parents in 2012, "the highest share in at least four decades").