IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 2, 2020 Session

## MELANIE SHEA THOMPSON ET AL. v. SOUTHLAND CONSTRUCTORS ET AL.

**Appeal from the Circuit Court for Sumner County**
**No. 83CC1-2018-CV-1032   Joe H. Thompson, Judge**

_____

### No. M2019-02060-COA-R3-CV

_____

This action involves a tragic accident resulting in the death of Tommy Smith ("Decedent"), who was working as a plumber connecting a sewer line when the trench he was in collapsed and crushed him. Decedent's children ("Plaintiffs") sued, among others, Focus Design Builders, LLC, general contractors for the building project, alleging negligence. The trial court granted Focus Design's motion to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Tenn. R. Civ. P. 12.02(6). The trial court held that Focus Design did not owe a duty of reasonable care under the circumstances because Decedent's death was unforeseeable. We hold the complaint states a cause of action for negligence and consequently reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

David Randolph Smith and Dominick R. Smith, Nashville, Tennessee, for the appellants, Melanie Shea Thompson and Tyler Thomas Smith.

Richard Spicer and Lance W. Thompson, Nashville, Tennessee, for the appellee, Focus Design Builders, LLC.

### OPINION

#### I. BACKGROUND

The construction project was the design and building of a new student activity center and gymnasium on the campus of Welch College in Gallatin, Tennessee. Welch College

hired defendant Southland Constructors, Inc. as general contractor and on-site construction manager. According to the complaint, Welch College also "hired defendant Focus Design Builders, LLC as a general contractor . . . with the duties and responsibilities imposed by its contracts and by taking out the building permit . . . for the project with the city of Gallatin on March 16, 2017."

Defendant Music City Fire Sprinkler, LLC, the utility contractor, installed the sewer lines for the project. Music City laid the pipe for the sewer line at issue but did not connect it to the building before it was buried. The Welch College basketball team was scheduled to play its opening game in the new gymnasium on October 27, 2017. The plumbing issue resulting from the unconnected sewer line was not discovered until approximately one day before the scheduled game. The complaint alleges that "negligently and recklessly the[] defendants proceeded in a rush and hurry to open the building to the public before proper inspections and a certificate of use and occupancy had been obtained."

Southland Constructors discovered the plumbing issue and called Mitchell Plumbing, Decedent's employer, to fix the problem. According to the complaint,

> Upon discovery of the negligent defect, Defendant SouthLand[1] Constructors, Inc. as agent for the owner (Welch College) and/or Welch College hired Mitchell Plumbing to connect the sewer line by a trenching and excavation job on an emergent basis to make the sewer operational for the opening basketball game scheduled the next night (Friday, October 27, 2017)— despite the fact that the building had not received a final inspection nor any use and occupancy permit.

> Contrary to its obligations as an owner, construction manager, and general contractor, Welch College, SouthLand Constructors, Inc. and Focus Design Builders failed to inspect the work that had been done by the contractors involved in the plumbing and sewer line construction and failed to advise of the need for special precautions and equipment for the excavation that was being rushed in wet weather, in a flood plain, on ground and soil that was dangerous and unstable (having previously been disturbed when the sewer line was installed some 35-40 feet from the building. . . .)

(Numbering in original omitted). Southland Constructors advised Mitchell Plumbing that a trench about fifteen feet long and three feet deep would be required to access the end of

---

[1] In various places in the record, the defendant's name is spelled "SouthLand," and in others, "Southland." The defendant's own answer consistently spells it "Southland," but in its answer to the amended complaint, it is primarily spelled "SouthLand." The record leaves us unsure of the correct capitalization.

the sewer line. This information turned out to be inaccurate; the trench required was longer and deeper than this estimate. Mitchell Plumbing allegedly relied on this misinformation and did not bring materials to shore up the sides of the trench.

Decedent and another Mitchell Plumbing employee arrived with a trackhoe excavator to connect the sewer line. The end of the sewer line was buried about five feet deep. Plaintiffs allege the soil in the area was in an especially dangerous condition because it was wet and loose due to the previous excavation. Shortly after Decedent entered the trench to connect the PVC piping from the bathroom to the sewer line, the walls collapsed on him and he was crushed to death.

Plaintiffs sued Welch College, Southland Constructors, Focus Design, and Music City for negligence resulting in Decedent's wrongful death. Specifically, the amended complaint alleges as follows in pertinent part:

> Defendant SouthLand Constructors, Inc. and Focus Design Builders, LLC through employees, agents, had the responsibility as a general contractor and site manager to make sure and ensure that no dangerous and hazardous conditions existed on said property and premises.
>
> *    *    *
>
> The death of Tommy Smith was caused by the direct and proximate result of the negligence of Defendants in the following particulars:
>
> a. In failing to construct, inspect and oversee that the sewer line had never been connected to the building;
>
> b. In misinforming Mitchell Plumbing and its employees that the trench that needed to be dug was 15 feet in length and 3 feet in depth;
>
> c. In failing to inform Mitchell Plumbing and its employees that the buried sewer line would require excavation protection (as depth was 5 feet or greater);
>
> d. Ordering and scheduling the work when it was wet, raining, cold and the soil was in a dangerous condition not suitable for excavation due to these conditions (Type C soil) and because of the prior excavation that had previously disturbed and loosened the soil.

3

e. Ordering work on a rush basis to accommodate the public in a building whose sewer line that had not been approved on a final inspection and had not been approved for use and occupancy.

f. Negligently failing to inspect or realize that a bathroom sewer line had not been properly connected and installed prior to burying and sodding the area.

g. Failing to properly plan the trenching and excavation and failing to have a proper competent person approve the trenching plan.

h. Failing to close the adjacent pavement and parking lot to vehicles while the excavation was occurring. Having failed to close the parking lot to vehicles and traffic, vibrations were from vehicles were a substantial factor in causing the trench wall to give way and cave in. The parking lot was at all relevant times under the exclusive control of SouthLand Constructors Inc., Welch College and/or Focus Design Builders, LLC.

i. In failing to take the necessary steps and adequate precautions to see or ensure that the excavation was undertaken safely;

j. In failing to perform reasonable inspections which would have detected the dangerous and/or hazardous conditions which existed;

k. In negligently failing to determine the depth of the sewer line before misinforming Mitchell Plumbing that its depth was only three feet;

l. In failing to perform regular or routine inspections of the soil, premises, bathroom, drain(s) and sewer line to ensure that no dangerous or hazardous condition existed;

m. In negligently rushing this job due to the previous delays and the scheduled basketball game thereby failing to take proper planning and safety precautions;

n. Failing to connect the sewer line to the bathroom line and drain thereby creative [*sic*] a defective and dangerous condition that directly caused the emergency/rushed excavation;

o. Failing to obtain a final approval and final inspection for the sewer line from the White House Utility District;

4

p. Failing to warn that the sewer line had been left unconnected to the building and concealed and covered up with dirt and sod to grade, thereby concealing the sewer line and creating a dangerous condition[.]

Focus Design filed a Rule 12.02(6) motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Welch College filed an answer denying liability, and cross-claims against Southland Constructors and Focus Design. The trial court granted Focus Design's motion to dismiss, holding as follows:

> Generally, an owner or occupier of land owes an independent contractor hired to perform work on the premises a duty to use reasonable care to provide a reasonably safe place in which to work. . . . But even assuming that as the general contractor, Focus Design Builders was the occupier of the property and therefore obligated to provide to independent contractors a reasonably safe place to work, such a duty does not carry with it the requirement of constant care and inspection under any and all circumstances.
>
> *       *       *
>
> Respectfully, the court finds that the Plaintiffs have failed to demonstrate that Focus Design Builders reasonably knew or should have known of the probability of injury to Mr. Smith. To extend the duty of care to Focus Design Builders under the facts alleged in this case would require Focus Design Builders to foresee the risk that another contractor would leave a sewer line disconnected, that Southland Constructors would hire Mitchell Plumbing to excavate the sewer line but misinform it of the depth of the line, that Mitchell Plumbing and Mr. Smith would continue to excavate below three (3) feet to a depth of more than five (5) feet without a trench box or sidewall protection, and that Mr. Smith would climb into a trench more than five (5) feet deep that was not supported with any sidewall protection.

(Citations omitted). The trial court granted Focus Design's motion to deem the court's dismissal of the complaint a final and appealable order pursuant to Tenn. R. Civ. P. 54.02, notwithstanding that other issues against other parties remain unadjudicated.

## II. ISSUES

Plaintiffs appeal, raising these issues, as quoted from their brief:

1.      Whether the Trial Court, at the Rule 12.02(6) pleadings stage, erred by finding that the allegations in the First Amended Complaint were insufficient to

5

establish a duty of care owed by Focus Design Builders to Plaintiffs' decedent, Tommy Smith due
to lack of foreseeable harm?

2. Whether it was reasonably foreseeable that Focus Design Builders' breach of its duty of care could result in a cave-in injury to Mr. Smith?

## III. STANDARD OF REVIEW

As this Court has recently reiterated, "[a] motion to dismiss filed pursuant to Tenn. R. Civ. P. 12.02(6) challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Mershon v. HPT TA Properties Trust*, No. M2018-00315-COA-R3-CV, 2018 WL 5793564, at *2 (Tenn. Ct. App., Nov. 5, 2018) (quoting *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (internal quotation marks omitted)). "A defendant who files a motion to dismiss admits the truth of all of the relevant and material allegations contained in the complaint, but asserts that the allegations fail to establish a cause of action." *Id.* (ellipses and internal quotation marks omitted). According to our Supreme Court,

> "Our motion-to-dismiss jurisprudence reflects the principle that this stage of the proceedings is particularly ill-suited for an evaluation of the likelihood of success on the merits or of the weight of the facts pleaded, or as a docket-clearing mechanism." *Webb v. Nashville Area Habitat for Humanity*, 346 S.W.3d 422, 437 (Tenn. 2011). In reviewing these motions, we are required to construe the complaint liberally, presume that all factual allegations are true and give the plaintiff the benefit of all reasonable inferences. *Id.* Only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief should a trial court grant a motion to dismiss. *Webb*, 346 S.W.3d at 426. The lower courts' legal conclusions are reviewed *de novo* without any presumption of correctness. *Id.*

*Cullum v. McCool*, 432 S.W.3d 829, 832 (Tenn. 2013). Whether a defendant owes a plaintiff a duty of care in a negligence case is a question of law that we review *de novo*. *Id.* at 832-33.

## IV. ANALYSIS

A plaintiff must prove the following elements to establish a negligence claim: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4)

causation in fact; and (5) proximate (legal) causation." *Helton v. Lawson*, No. E2018-02119-COA-R3-CV, 2019 WL 6954180, at *9 (Tenn. Ct. App. Dec. 18, 2019) (quoting *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)). "Duty is 'a legal obligation to conform to a reasonable person standard of care in order to protect others against unreasonable risks of harm.'" *Cullum*, 432 S.W.3d at 833 (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008).

As this Court stated in *Miranda v. CSC Sugar, LLC*, No. W2017-01986-COA-R3-CV, 2018 WL 3302035 at *3 (Tenn. Ct. App. July 5, 2018),

> In premises liability cases, persons in control of real property have a duty to exercise reasonable care under the circumstances to prevent injury to persons lawfully on the premises. *Johnson v. EMPE, Inc.*, 837 S.W.2d 62, 65 (Tenn. Ct. App. 1992). Under Tennessee law, the employee of an independent contractor enjoys the status of an invitee while performing work on the premises of the owner-contractee. *Dempster Bros. Inc. v. Duncan*, 61 Tenn. App. 88, 452 S.W.2d 902, 906 (1969). As a result of the employee's status as an invitee, the premises owner owes the employee "the duty to exercise reasonable care to see that an employee has a reasonably safe place to work." *Id.* This general duty includes the specific responsibility of either removing, or warning the independent contractor of, any hidden or latent dangers on the property. *Bennett v. Trevecca Nazarene Univ.*, 216 S.W.3d 293, 299 (Tenn. 2007).

Tennessee appellate courts addressing situations where an employee of a subcontractor is injured at a workplace have looked to, among other things, the contracts governing the relationships between the landowners, prime contractors, and subcontractors to examine the scope of parties' respective duties. *See, e.g., Johnson v. EMPE, Inc.*, 837 S.W.2d 62, 65-68 (Tenn. Ct. App. 1992); *Oman Constr. Co. v. Tenn. Cent. Ry. Co.*, 370 S.W.2d 563, 575 (Tenn. 1963) (noting that "[t]he existence of a contract may furnish the occasion for a tort obligation" and ruling "there was ample proof introduced at the trial to make an issue for the jury as to negligence on the part of [defendants] in constructing the tunnel beneath plaintiff's property"); *Martin v. Garner & Law*, No. 03A01-9102-CV-00080, 1991 WL 177915, at *1-2 (Tenn. Ct. App. Sept. 13, 1991). In *Martin*, a case involving the death of a contractor's workers in a trench cave-in, the Court observed that "[t]he contract between the owner and the contractor (decedents' employer) utilizes the standard American Institute of Architects form, which places sole responsibility for supervision and safety on the contractor." 1991 WL 177915, at *1.

7

The complaint in this case alleges that Focus Design, "as general contractor for the construction . . . [had] the duties and responsibilities imposed by its contracts and by taking out the building permit." It further alleges:

> Plaintiff avers Southland Constructors, Inc. acted as an agent of Focus Design Builders, LLC by both the common law of agency and/or by virtue of Focus Design Builder's duties imposed under the building permit and/or by its contractual relationship with Welch College and/or SouthLand Constructors, Inc.

*    *    *

> Focus Design Builders, LLC through employees, agents, had the responsibility as a general contractor and site manager to make sure and ensure that no dangerous and hazardous conditions existed on said property and premises.

In their initial response to Focus Design's motion to dismiss, plaintiffs argued that dismissal of their complaint was premature because they had not been allowed time and opportunity to conduct discovery of the alleged contracts, among other things. We agree that plaintiffs were entitled to conduct discovery to substantiate their claims that Focus Design undertook a duty to oversee and supervise the construction project, inspect the work done by subcontractors, and warn employees of hazardous conditions. In *Martin*, this Court stated the following in response to a similar argument:

> On the remaining issue, the trial judge abused his discretion in restricting plaintiffs' discovery to Blount Excavating employees. Plaintiffs were placed in [the] position of responding to a motion for summary judgment without meaningful discovery of all defendants. While the trial judge has broad discretion over the discovery process, this discretion is abused when summary judgment is granted without permitting adequate discovery.

1991 WL 177915, at *2.

When Welch College filed its cross-claim against Focus Design, it attached its contract with Focus Design to its answer and cross-claim, and further expressly alleged the following in its pleading:

> Welch College entered into a contract with [Focus Design], AIA® Document A103™ - 2007, Standard Form of Agreement Between Owner and

8

Contractor, . . . (the "Contract"), regarding the construction by [Focus Design] of a Student Recreation Center for Welch College.

The Contract incorporated the AIA® Document A201™ - 2007 General Conditions of the Contract for Construction ("General Conditions"), a copy of which is attached hereto as Exhibit B. Section 3.3 of the General Conditions entitled **SUPERVISION AND CONSTRUCTION PROCEDURES** contains the following relevant provisions:

**§ 3.3.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. . . .

\* \* \*

**§ 3.3.3** The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

The Contract, at Section 10.2 of the General Conditions entitled **SAFETY OF PERSONS AND PROPERTY**, provides:

**§ 10.2.1** The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to

> **.1** employees on the Work and other persons who may be affected thereby;
>
> **.2** the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care,

9

custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and

**.3** other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

**§ 10.2.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

**§ 10.2.3** The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

\*     \*     \*

**§ 10.2.6** The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents.  This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

**§ 10.2.7** The Contractor shall not permit any part of the construction or site to be loaded so as to cause damage or create an unsafe condition.

(Bold font and capitalization in original; numbering omitted).

The trial court dismissed the complaint on the ground that the chain of events leading to Decedent's death was unforeseeable.  Our Supreme Court, in the cases of *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347 (Tenn. 2008) and *Giggers v. Memphis Housing Auth.*, 277 S.W.3d 359 (Tenn. 2009), provided guidance regarding a trial court's role in assessing foreseeability at a pretrial stage of litigation.  The Court explained:

In order to determine whether a duty is owed in a particular circumstance, courts must first establish that the risk is foreseeable, and, if so, must then

apply a balancing test based upon principles of fairness to identify whether the risk was unreasonable. *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 366 (Tenn. 2008). That is, in consideration of, among other things, the presence or absence of prior similar incidents, and other circumstances, does the foreseeability of the harm outweigh the burden of the duty imposed? *McClung*, 937 S.W.2d at 901. In *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 820 (Tenn. 2008), we held as follows:

> The foreseeability of the harm is a key factor in the equation because, in general terms, "[f]oreseeability is the test of negligence." *West*, 172 S.W.3d at 552 (*quoting Linder Constr. Co.*, 845 S.W.2d at 178); *Hale v. Ostrow*, 166 S.W.3d 713, 716–17 (Tenn. 2005). " 'A risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable.' " *West*, 172 S.W.3d at 551 (quoting *Linder Constr. Co.*, 845 S.W.2d at 178). However, foreseeability alone does not create a duty to exercise reasonable care. *McClung*, 937 S.W.2d at 904. If the risk is foreseeable, then courts should weigh the remaining factors to determine if an imposition of duty is justified.

Although no duty will arise when a risk of injury is not generally foreseeable, foreseeability alone "is not, in and of itself, sufficient to create a duty." *Satterfield*, 266 S.W.3d at 366. Rather, when a minimum threshold of foreseeability is established, courts must engage in "an analysis of the relevant public policy considerations," *id.* at 364–65, to determine whether a duty enforceable in tort must be imposed. While not exclusive, the factors are as follows:

> [T]he foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

*McCall*, 913 S.W.2d at 153. *See also Burroughs*, 118 S.W.3d at 329.

11

When and if the trial court determines that the foreseeability of the harm and its particular gravity outweigh the burden of taking reasonable protective measures, the question "of duty and of whether defendants have breached that duty . . . is one for the jury to determine based upon proof presented at trial." *McClung*, 937 S.W.2d at 904.

*Giggers*, 277 S.W.3d at 365-66.

The question of whether Plaintiffs have demonstrated "a minimum threshold of foreseeability," *id.* at 366, and thereby established "a prima facie case of specific foreseeability," *id.* at 367, is inextricably intertwined with questions of what Focus Design knew or reasonably should have known, and when. Tennessee appellate courts have focused on the often fact-driven questions of knowledge and awareness of alleged defects in determining foreseeability at a pretrial stage. For example, the *Satterfield* Court observed that "[u]nder the facts alleged in Ms. Satterfield's complaint, Alcoa was aware of the presence of significant quantities of asbestos fibers on its employees' work clothes. It was also aware of the dangers posed by even small quantities of asbestos and that asbestos fibers were being transmitted by its employees to others." 266 S.W.3d at 367. Based on these facts, among other things, the Court reversed the trial court's grant of judgment on the pleadings for the defendant. *Id.* at 375. In *Giggers*, the Supreme Court, reversing summary judgment, found that Memphis Housing Authority, "with some general knowledge of criminal activity within its housing complexes and a particular knowledge of Miller's altercation with another tenant four years earlier, could have reasonably foreseen the probability of a violent act." 277 S.W.3d at 367.

This Court has stated on several occasions that "[p]remises liability stems from superior knowledge of the condition of the premises." *Keirsey v. K-VA-T Food Stores, Inc.*, No. E2018-01213-COA-R3-CV, 2019 WL 1301758, at *4 (Tenn. Ct. App. Mar. 20, 2019); *Shaw v. Metro. Gov't of Nashville*, 596 S.W.3d 726, 735 (Tenn. Ct. App. 2019) (stating that a premises owner's "duty to exercise reasonable care under the circumstances to prevent injury to persons lawfully on the premises . . . is based on the understanding that an owner has 'superior knowledge of any perilous condition that may exist on the property'") (quoting *Dobson v. State*, 23 S.W.3d 324, 330 (Tenn. Ct. App. 1999)). Focus Design has not cited any appellate opinion upholding a trial court's dismissal of a complaint on the ground that the plaintiff was unable to establish a minimum threshold of foreseeability, nor has our research revealed such a case. Conversely, we have reversed such decisions at either the motion-to-dismiss or summary judgment stage on several occasions. *See, e.g., Mershon*, 2018 WL 5793564, at *1 (reversing dismissal on foreseeability grounds because "dismissing the complaint is premature at this stage of the proceedings"); *Richardson v. Trenton Special Sch. Dist.*, No. W2015-01608-COA-R3-CV, 2016 WL 3595563, at *7 (Tenn. Ct. App. June 27, 2016) ("We conclude that the question

of whether this assault was foreseeable based on the school's supervision policy is a question to be determined at trial, and that summary judgment is premature here"); *Riggs v. Wright*, 510 S.W.3d 421, 432 (Tenn. Ct. App. 2016) (affirming dismissal on other grounds but expressly not on foreseeability; stating "we assume *arguendo* that, at the motion to dismiss stage, Mr. Riggs has alleged sufficient facts from which to conclude that the harm involved was foreseeable"); *Lourcey v. Estate of Scarlett*, No. M2002-00995-COA-R3-CV, 2003 WL 21525259, at *3 (Tenn. Ct. App. July 8, 2003) (reversing dismissal on foreseeability grounds).

In the present case, Focus Design argues that it was not aware that Southland Constructors called Mitchell Plumbing to fix the sewer line problem. Plaintiffs respond that this assertion of ignorance is disputable. They also allege that Focus Design *should* have known of the allegedly hazardous condition of the excavated soil, and should have discovered and been aware of the unattached sewer line. Moreover, Plaintiffs allege that Southland Constructors acted as Focus Design's agent, a contention Focus Design denies, but which must be accepted as true at the motion-to-dismiss stage.[2] Additionally, Plaintiffs have alleged direct conduct, or lack thereof, by Focus Design, which it argues was a cause of Decedent's injuries, by, according to the complaint, "[f]ailing to close the adjacent pavement and parking lot to vehicles while the excavation was occurring. Having failed to close the parking lot to vehicles and traffic, vibrations . . . from vehicles were a substantial factor in causing the trench wall to give way and cave in."

In *Cullum*, the Supreme Court was also presented with a case where the trial court dismissed a complaint upon its finding that the defendant did not have a duty of reasonable care under the circumstances. The Court's conclusory observations are pertinent and apt to the present case:

> Assuming, as we must at this stage of the proceeding, that the Cullums' allegations are true, the harm caused by Ms. McCool was reasonably foreseeable.

\*          \*          \*

---

[2] Focus Design also argues that we should apply the "independent contractor rule" that, generally, "an employer or general contractor is not ordinarily liable for the negligence of an independent contractor," quoting *Wilson v. Thompson Const. Co*, 86 S.W.3d 536, 541 (Tenn. Ct. App. 2001). Both parties recognize on appeal that this issue was raised but not addressed by the trial court. We note in passing that although Focus Design may continue to allege and argue comparative fault as a defense, Plaintiffs' action is based on much more than simply any alleged negligence of the subcontractor Mitchell Plumbing or its employee, Decedent. Consequently, the independent contractor rule does not provide a ground to dismiss the complaint for negligence.

"As a practical matter, a court serves as a gate-keeper and may exclude a claim only if it finds, as a matter of law, that the defendant does not owe a duty to the plaintiff." *Satterfield*, 266 S.W.3d at 368. We do not shut the gate on the Cullums' claims. But, we emphasize the limited nature of our holding, which turns in large part on its procedural posture. There has been no discovery, no trial and no decision by a factfinder. We are only reviewing the sufficiency of the allegations in the Cullums' complaint, which we must accept as true. Our decision at this early stage of the case is not an evaluation of the likelihood of success on the merits of the claim. We do not know what either party will be able to prove when this matter is heard on the merits. We are simply holding that at this stage of the proceedings, Wal-Mart cannot show as a threshold matter of law that it did not have a duty to protect its patron, Ms. Cullum.

432 S.W.3d at 835, 838-39. As did the *Cullum* Court, we reverse the judgment of the trial court because the Plaintiffs have made a threshold showing of foreseeability. Accepting the allegations of the complaint and reasonable inferences therefrom as true, dismissal was unwarranted.

## V. CONCLUSION

The judgment of the trial court is reversed and the case remanded for such further actions as may be necessary, consistent with this opinion. Costs on appeal are assessed to the appellee, Focus Design Builders, LLC, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE

14