James R. GLENN, Petitioner,

v.

Brenda CONNER and Billy W. Conner, Respondents.

Supreme Court of Tennessee.

Feb. 9, 1976.

Roy Hall, Waldrop, Hall & Tomlin, Jackson, for petitioner.

Lloyd Tatum, Henderson, for respondents.

## OPINION

PER CURIAM.

This is one of two suits for personal injury and property damage which arose from two separate and distinct automobile collisions. The particular lawsuit at issue is the only one which has been appealed to this Court. The trial court directed a verdict in favor of the petitioner. The Court of Appeals reversed and remanded.

The determinative legal issue which emerges from the following facts is whether a non-negligent driver has a duty to warn others about a dangerous highway condition to which he contributed.

### I.

On April 3, 1971, at or about 8:30 p. m., petitioner was proceeding northwardly on U. S. Highway 45, approximately one-fourth mile from Pinson, Tennessee, when he overtook a truck traveling in the same direction. Petitioner testified that the truck's taillights were not on; and that as he approached, this absence of a visible signal forced him to· slam on his brakes, whereupon he lost control, crossed the center line and collided with an automobile proceeding southwardly, driven by Danny Weaver.

The impact to both autos was slight, with their respective left rear panels sustaining the majority of the damage. However the collision caused Weaver's vehicle to come to rest perpendicular to the highway, obstructing the entire northbound lane. Petitioner's vehicle came to rest completely off the surface of the two-lane highway, on the western shoulder facing north.

The two drivers immediately engaged in discussion as to fault and the extent of damage. While their conversation continued, the driver of the truck (which allegedly caused the entire episode), learning that there were no personal injuries, drove from the scene never to be heard from again. At this same time, Weaver's companion walked to a nearby house in an effort to notify police officials. Shortly thereafter two or more passersby traveled around the scene, one of whom suggested that Weaver's car be moved. All these events transpired during a period of four to eight minutes after the initial collision.

Petitioner made repeated verbal requests to Weaver to remove his vehicle from the highway. The vehicle was mechanically in order following the collision, but Weaver refused to move it because of his understanding that police must first inspect the scene.

Then somewhere between four and eight minutes after the accident and following

the above described activities, respondents approached the scene traveling in the northbound lane at an approximate speed of 50–60 miles per hour. Weaver spotted the oncoming car, and realizing its inability to stop in time, began running toward the respondent's auto, waving his arms and yelling a warning. Petitioner, being alerted to the emergency, began to follow Weaver, repeating these sights and sound of warning. At approximately forty (40) feet south of his stationary vehicle, Weaver, aware that his efforts were futile, jumped aside, and respondent, thus unable to take to the right shoulder, was forced to career broadside into the obstructing Weaver automobile. Respondent left thirty-three (33) paces of skid marks. His car was severely damaged and his wife suffered rather serious injuries.

The proof is disputed as to the following: (1) did the truck have lights? (Weaver testified that its headlights were visible); (2) did petitioner voluntarily cross the center line? (Weaver also testified that petitioner attempted to pass the truck and on sighting his vehicle cut short his attempt; only to then initiate a second attempt which ended in collision); (3) were the lights on Weaver's obstructing vehicle left burning? (petitioner testified that Weaver cut off his lights after the impact); (4) what actions did petitioner and Weaver actually take to warn oncoming motorists?

As a result of these two separate collisions, J. M. Weaver (owner of the obstructing vehicle and father of driver Danny Weaver) filed suit against petitioner and respondents. The respondents counterclaimed against petitioner and the Weavers. At the close of all the proof, the trial judge directed a verdict for petitioner in the case of *Conners v. Glenn and Weaver*, and submitted to the jury the remaining issues therein. The jury being unable to resolve the remaining issues, a mistrial was declared. The Conners then non-suited as to the Weavers.

The instant appeal comes from the reversal by the Court of Appeals of the directed verdict in favor of petitioner. (As regards the suit, wherein Weaver is the plaintiff, no appeal arose because the verdict had no adverse effect upon such suit).

## II.

The specific, narrow issue framed by the evidence herein presented has virtually evaded judicial interpretation and development by the courts of this State. For all practical purposes, this case is one of first impression in Tennessee.

In 1932, the Court of Appeals, E.S. in the case of *Brown v. Wallace*, 15 Tenn.App. 187, voiced the following pertinent generalized statement:

> The *leaving of a car upon a highway* for the making of absolutely necessary repairs may also in certain instances be negligent where it is so left as to unnecessarily obstruct the traffic and *where no precautions are taken to signal approaching cars.* 15 Tenn.App. at 193 (Emphasis supplied)

However, *Brown v. Wallace* differs from the case at bar in that there, the vehicle was mechanically disabled and was parked in violation of specific city ordinances.

Also of tangential application are the decisions which announce: (1) that construction companies are under a duty to warn others of obstructions or structural projects on the highway which, though not negligently constructed, would foreseeably pose a danger to motorists, *Vance v. Hale*, 156 Tenn. 389, 2 S.W.2d 94 (1928); *Brinkley v. Gallahar*, 50 Tenn.App. 504, 359 S.W.2d 857 (1962); and (2) that any disabled bus, truck or truck tractor must display lighted flares as warning devices of its stationary position, *Inter-City Trucking Co. v. Daniels*, 181 Tenn. 126, 178 S.W.2d 756 (1944); *Watson v. Southern Bus Lines*, 186 F.2d 981 (6th Cir. 1951); see also §§ 59–919, 920 T.C.A.

While these Tennessee cases, and the principles upon which they are founded[1] approach the issue at hand, decisions from other jurisdictions prove more pertinent.

The courts of Georgia touched upon a non-negligent driver's "duty to warn" in the case of *Hardy v. Brooks*, 103 Ga.App. 124, 118 S.E.2d 492 (1961) when the following rule was adopted:

> . . . . if one by his own act, *although without negligence on his part*, creates a dangerous situation in or along a public highway and it reasonably appears that other users of the highway in the exercise of ordinary care for their own safety may be injured by the dangerous situation so created, *the one creating the same is under a duty to eliminate the danger or give warning to others of its presence.* (citing cases from Nebraska and Louisiana). (Emphasis supplied) 118 S.E.2d at 495.

In 1962, the Supreme Court of South Carolina in *Matthews v. Porter*, 239 S.C. 620, 124 S.E.2d 321 (1962) (a case involving two separate collisions) recognized a driver's "duty to warn" following a collision which obstructs the highway. However, the court limited the application of the duty to a driver whose negligence had caused or created the obstruction.

With direct reliance upon *Hardy v. Brooks, supra,* the Supreme Court of Colorado in *Kirkham v. Hickerson Bros. Truck Co.*, 162 Colo. 125, 425 P.2d 34 (1967) announced a similar rule based upon the "common law doctrine that one who moves an obstruction into someone else's path and thus creates ·a hazard to another must either *remove the obstruction or warn others of the hazard if he has a reasonable time and opportunity to do so.*"

In a later opinion, the Colorado Court of Appeals, in a case involving one automobile which collided with the rear of a stalled automobile, voiced the general rule by incorporating a quotation from Corpus Juris Secundum:

The general rule as stated in 60A C.J.S. Motor Vehicles § 335(1), is:

> The operator of a standing or parked vehicle which constitutes a source of danger to other users of the highway is generally bound to exercise ordinary or reasonable care to give adequate warning or notice to approaching traffic of the presence of the standing vehicle, and such duty exists irrespective of the reason for stopping the vehicle on the highway. So the driver of the stopped vehicle must take such precautions as would reasonably be calculated to prevent injury, whether by the use of lights, flags, guards, or other practical means, and the failure to give warning may constitute negligence, even in the absence of any specific duty imposed by governmental regulations. *Getz v. Glassner*, 28 Colo.App. 267, 473 P.2d 175, 176 (Colo.App.1970)

In a series of automobile collision cases, the Texas Court of Civil Appeals formulated a general rule which clearly enunciated a driver's "duty to warn" once his vehicle is in a stationary position upon the highway.

First, in *Rodgerson v. Lafollette*, 424 S.W.2d 280 (Tex.Civ.App.1968), the court held that even though a driver is properly parked upon a highway, he has "*a common law duty to warn other motorists* that it was parked if an ordinary prudent person, in the exercise of ordinary care, would have anticipated and foreseen that, in the absence of such a warning, a collision might occur." This holding was followed and the rule rearticulated in the later case of *Traders and General Insurance Company v. Anderson*, 472 S.W.2d 582 (Tex.Civ.App.1971).

> The legislation was doubtless enacted to meet an urgent demand based on experience for the better protection of travelers on the highway.

---

**1.** Justice Chambliss, speaking for this Court in *Inter-City Trucking Co. v. Daniels, supra,* articulated the general philosophy behind the statutory development of warning devices for commercial vehicles:

Then in 1974, this same court in a case similar to the one under review, (involving two separate and distinct automobile collisions), clearly applied the rule of a driver's "duty to warn" to the non-negligent driver involved in a collision when it held:

> There is authority for the proposition that, irrespective of the reason for stopping, an operator of a stopped vehicle that poses a source of danger to other motorists, owes a common law duty to warn those motorists that he is stopped, if an ordinary prudent person in the exercise of ordinary care would have foreseen that, in the absence of such warning, a collision might occur. *Traders and General Insurance Co. v. Anderson,* 472 S.W.2d 582 (Tex.Civ.App.—Tyler 1971, n. w. h.); *Shepard v. Ray,* 432 S.W.2d 178 (Tex.Civ.App.—Dallas 1968, n. w. h.); *McClellan v. Lee,* 426 S.W.2d 635 (Tex. Civ.App.—Houston, 1st Dist., 1968, n. w. h.); *Rodgerson v. Lafollette,* 424 S.W.2d 280 (Tex.Civ.App.—Houston, 14th Dist., 1968, n. r. e.). See 60A C.J.S. Motor Vehicles § 335(1). *Lofton v. Norman,* 508 S.W.2d 915, 919 (Tex.Civ.App.1974).

▇ Following this line of cases, we hold that after the collision, petitioner was under a "common-law duty to warn" other motorists of the obstruction in the highway, to which he had contributed. We hold that this duty applied, regardless of whether his contribution to the dangerous condition stemmed from his negligence in operating his vehicle. We add that it had full application to petitioner even though a similar duty rested upon Weaver, the operator of the obstructing vehicle. It is no defense that a similar duty rested upon another person. *Matthews v. Porter, supra.*

## III.

Having established that petitioner was under a recognized "common-law duty to warn", the evidence causes the issue to then become whether Weaver's refusal in not moving his operable vehicle, acted as an unforeseeable intervening cause which negated any negligence by petitioner as to the second collision. Or stated alternatively, did the actions of Weaver extinguish petitioner's duty to warn?

▇ We concur in the finding by the trial court and the Court of Appeals that the refusal by Weaver to remove his auto was an unforeseeable intervening cause, which superseded any negligence by petitioner in the initial operation of his vehicle on the issue of proximate cause of the injuries to the Conners from the second collision. This intervention must be distinguished from the issue under discussion of whether the same refusal to move the vehicle acted as a superseding cause which relieved petitioner of his separate "duty to warn."

This Court defined with clarity the application of intervening[2] or superseding cause in *Lancaster v. Montesi,* 216 Tenn. 50, 390 S.W.2d 217 (1965), when it explained:

> Once a duty to plaintiff is established, and negligence of the defendant established, the ultimate question is whether the negligence of defendant was the proximate or legal cause.

> \* \* \* \* · \* \*

> The negligent act of defendant, to be the legal cause of plaintiff's injuries, need not be the sole cause. It is sufficient if such act was a substantial factor in causing the harm. (citation omitted).

> However, there may be conduct, either by plaintiff or a third party, of such nature as to break the chain of causation between defendant's act and the harm, and so relieve the defendant of liability. *Such conduct is known in the vernacular of the law as an independent, intervening cause.*

> The same rule of foreseeability is applied to intervening cause. The defend-

---

2. Dean Prosser defines intervening cause as follows: An intervening cause is one which comes into active operation in producing the result *after* the negligence of the defendant. § 44, Prosser on Torts (4th ed., 1971). (Emphasis his own).

ant, in order to be liable, must have been able to anticipate or reasonably foresee what usually will happen. (citation omitted). The rule 'does not require him to anticipate and provide against, what is unusual or * * * remotely possible, but whether it was probable according to the usual experience of persons.' (citations omitted). 390 S.W.2d at 216, 217. (Emphasis supplied)

To exculpate petitioner from any negligence in not warning approaching motorists, the intervening cause (the refusal of Weaver to move his vehicle) must be one which breaks the sequence or causal connection between his negligence and the injury to the Conners. *Matthews v. Porter, supra.*

In a case of factual similarity, *Traders and General Insurance Company v. Robison,* 289 So.2d 178 (La.App.1973), the application of intervening cause produced the following result:

The second accident was not the natural and probable consequence of Mrs. Burton's negligence in causing the first accident, namely, failing to yield the right of way to Miss Seals. We find, as did the trial court, *that the second accident resulted from an independent, intervening, unforeseeable cause, that is, the negligence of Miss Seals in failing to discharge her duty to warn the traveling public of the danger attendant upon her vehicle being stalled on a public road.* (emphasis supplied). 289 So.2d at 184.

We find the descriptive adjectives used by the court in *Traders and General Insurance Company* to be applicable and appropriate in describing the action of Weaver in refusing to move his mechanically operable automobile. Such was an independent, intervening and unforeseeable cause, and its effect was to supersede any negligence by petitioner in failing to properly warn oncoming motorists of the hazard to which he had contributed.

We thus extend the reasoning of the Court of Appeals and state that Weaver's refusal to remove his vehicle was an intervening cause which broke any chain of causation for the injuries to the Conners stemming not only from any negligence by petitioner in operating his vehicle, but also from any negligent failure to properly warn oncoming travelers.

IV.

Ordinarily, once the court determines that a defendant is operating under a legal duty, it is for the jury to determine if the actions by the defendant were satisfactory in discharging that duty. *Prosser, supra.* And it has been held that the operation under the specific "duty to warn" presents a jury question. *Lofton v. Norman, supra.*

Yet, we find that reasonable men could not differ as to the unforeseeability of the intervening cause—Weaver's refusal to remove his operable vehicle from its perpendicular position across a traveled U. S. Highway in the nighttime.

Accordingly, we affirm the Court of Appeals in its construction that petitioner was under a "common-law duty to warn," regardless of his negligence in operating his vehicle, but we reverse as to its interpretation that the existence and establishment of the intervening cause was a matter for the jury.

We hold that Weaver's conduct, as a matter of law, constituted the proximate cause of the injuries and damages sustained by the respondents, as between the parties in this appeal.

Reversed.