

IN THE

# Court of Appeals of Indiana

NFI Interactive Logistics LLC and D'Andre Terry,

*Appellants-Defendants*



FILED

Jun 26 2024, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

James Bruski and Dawn Bruski,

*Appellees-Plaintiffs*

---

June 26, 2024

Court of Appeals Case No.
23A-CT-1969

Appeal from the Porter Superior Court

The Honorable Jeffrey W. Clymer, Judge

Trial Court Cause No.
64D02-2212-CT-10057

---

**Opinion by Judge Foley**
Judges Riley and Brown concur.

**Foley, Judge.**

[1] In December 2022, James Bruski ("James") and Dawn Bruski ("Dawn")—a married couple (collectively, "the Plaintiffs")—filed this negligence action against D'Andre Terry ("Terry") and NFI Interactive Logistics LLC ("NFI") (collectively, "the Defendants")[1] alleging that Terry struck a disabled vehicle on the interstate with his commercial semi-truck and tractor trailer ("CMV") and negligently failed to warn James, who collided with the same disabled vehicle about ten minutes after Terry's collision. The Defendants filed a Trial Rule 12(B)(6) motion to dismiss for failure to state a claim, the trial court denied the motion, and the Defendants perfected this interlocutory appeal. On appeal, the Defendants maintain that the trial court should have dismissed the complaint.[2]

[2] We conclude that the complaint states a viable theory of liability to the extent that Terry's collision with the disabled vehicle—even if Terry was not negligent in that collision—can be said to have increased the hazard on the road (e.g., the collision created an unavoidable debris field or moved the disabled vehicle such that it straddled an additional lane of traffic). We further conclude that the complaint states a viable claim of negligence per se based on the violation of a

---

[1] The amended complaint named three other defendants; one was dismissed from the action and the others, which are insurance companies, do not participate on appeal. We do not further refer to those individuals.

[2] After the trial court certified its interlocutory order, the Plaintiffs moved to amend the complaint. *See* Appellants' App. Vol. 2 pp. 12, 104–06. Because that motion remains pending, we do not consider the Plaintiff's Proposed Second Amended Complaint. *See* Appellees' App. pp. 2–15. Rather, we base our decision on the operative complaint filed in February 2023. *See* Appellants' App. Vol. 2 pp. 67–78.

federal regulation applicable to those who operate commercial vehicles. We therefore affirm the trial court's decision denying the Defendant's Trial Rule 12(B)(6) motion and we remand for further proceedings on the complaint.

## Facts and Procedural History

[3] The Plaintiffs sued the Defendants on December 5, 2022, alleging liability for damages stemming from a vehicle collision on December 16, 2019. In their amended complaint, the Plaintiffs alleged that, around 2:50 a.m., an eastbound driver on I-94 lost control of a Mercury vehicle ("the Mercury") and "struck a concrete barrier wall," causing the Mercury to become "disabled on a dark, unlit portion of [I-94]." Appellants' App. Vol. 2 p. 68. At the time, Terry was also driving eastbound on I-94, operating a CMV "under the operating authority of NFI[.]" *Id.* Terry struck the Mercury around 2:50 a.m. and "came to a controlled stop on the right shoulder of [I-94]." *Id.* at 69. The complaint further alleged that, "from approximately 2:50 a.m. through approximately 3:00 a.m., [Terry] did not activate the hazard warning signal flashers on, nor place any hazard warning triangles . . . or flares behind, the [CMV] to alert approaching motorists of the hazards in the travel lane and [the] shoulder of [I-94]." *Id.* Around 3:00 a.m., James was driving his semi-tractor and trailer eastbound on I-94 when he "struck the Mercury, struck a concrete barrier wall, and then rolled over the concrete barrier wall." *Id.* Due to the collision, James "experience[d] harms, including injuries, pain, suffering, and damages." *Id.* at 70. Moreover, because of the injuries to James, Dawn also "experience[d] harms, including loss of consortium, services, and damages." *Id.* at 71.

In Count I, the Plaintiffs claimed the Defendants were liable due to a negligent failure to warn. They specifically alleged that, at the time of the collision, the Defendants were "subject to the Federal Motor Carrier Safety Regulations as incorporated by reference in Indiana [Code section] 8-2.1-24-18." *Id.* at 69. The Plaintiffs claimed that, by failing to activate his flashers or place a warning device, Terry violated "one or more laws[.]" *Id.* at 70. The Plaintiffs further alleged that "the wrongful conduct of . . . Terry was a responsible cause of James['s] collision," specifying that "[t]he wrongful conduct . . . was the unexcused violation of one or more laws designed to protect . . . James . . . against the type of harm [that] occurred because of the violation." *Id.* As for Count II, the Plaintiffs alleged that NFI was liable for negligently training and supervising Terry, who should have warned James under the circumstances.

In January 2023, the Defendants filed a motion to dismiss under Trial Rule 12(B)(6) for the failure to state a claim upon which relief can be granted. In a supporting memorandum, the Defendants asserted that the Plaintiffs "do not allege Terry was involved in [James's] collision. Instead, [they] argue Terry's failure to place warning devices around his [CMV] caused [James] to hit someone else's disabled car that was stopped on the opposite side of the interstate and closer to oncoming traffic than Terry." *Id.* at 30. The Defendants added that the Plaintiffs "do not allege Terry caused any hazard[.]" *Id.* Rather, according to the Defendants, "[a]ll [the] Plaintiffs allege is Terry was stopped further down the interstate and failed to place warning devices around his own [CMV], which was nowhere near [James's] collision." *Id.* at 31. They argued

that "Terry's duty was limited to his own [CMV]" and "[h]e was under no duty to place warning devices around his CMV to warn [James] of someone else's car." *Id.* As for the alleged statutory "duty to place warning devices," the Defendants argued that James "was not protected by that statute." *Id.* They asserted: "That statutory duty was designed to protect motorists from stopped CMVs, not other roadway hazards like a deer or, in this case, someone else's stopped car." *Id.* In a footnote, the Defendants addressed the viability of a claim premised on James having contributed to the hazard. The Defendants asserted that the Plaintiffs "do not allege Terry assumed a duty through his driving but rather that he failed to warn [James] of [the disabled Mercury] after [Terry] hit it." *Id.* at 39 n.9. The Defendants further asserted, without citation to the complaint, that "[a]fter Terry hit [the disabled Mercury], the [Mercury] did not change position and was still blocking the same lanes of traffic." *Id.*

[6] The Plaintiffs responded to the motion to dismiss and largely focused on whether Terry engaged in "misconduct" that "included failing to activate the hazard warning signal flashers on, nor place any [warning devices] behind" Terry's CMV "to alert approaching motorists of the hazards in the travel lane and shoulder of [I-94] and failing to comply" with statutory requirements. *Id.* at 50. The Plaintiffs seemingly responded to the Defendant's footnote regarding the extent to which Terry contributed to the roadway hazard, contending that "Terry exerted some control over the [disabled] Mercury in the roadway by striking and moving it with his [CMV]." *Id.* at 57. They asserted that, "[a]t this early stage, a reasonable inference for the court to draw is that Terry's conduct

contributed in causing the hazardous condition by moving the [disabled] Mercury to where it was hit by the [truck] being driven by [James]." *Id.*

On May 19, 2023, the trial court held a hearing on the motion to dismiss. Regarding the scope of Terry's duty under Indiana law, the Defendants posited: "How is Terry at fault for a collision involving a guy who wrecked himself and a plaintiff who hit the guy that wrecked himself?" Tr. Vol. 2 p. 6. The trial court took the matter under advisement and later entered an order denying the motion to dismiss. The Defendants then perfected this interlocutory appeal.

## Discussion and Decision

## I. Standard of Review

The Defendants appeal the denial of their Trial Rule 12(B)(6) motion, arguing the complaint failed to state a viable negligence claim premised on a duty to warn. "A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 134 (Ind. 2006). This type of motion presents a pure question of law. *See Safeco Ins. Co. of Ind. v. Blue Sky Innovation Grp., Inc.*, 230 N.E.3d 898, 901 (Ind. 2024). Thus, "[a]ppellate review . . . is de novo." *Id.* In reviewing the trial court's ruling, we do not examine "the sufficiency of the facts alleged regarding their adequacy to provide recovery[.]" *Id.* at 902. Rather, we examine "whether a legally actionable injury has occurred in a plaintiff's stated factual scenario." *Id.* Thus, "[t]he appellate

court accepts the alleged facts as true, drawing every reasonable inference in favor of the non-moving party." *Id.* Dismissal is appropriate only "when it is 'apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances.'" *Id.* (quoting *McQueen v. Fayette Cnty. Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999), *trans. denied*). That is, "a complaint is not subject to dismissal" under Trial Rule 12(B)(6) "unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts." *State v. Rankin*, 294 N.E.2d 604, 606 (Ind. 1973).

[9] Trial Rule 8(A) sets forth our general rules of pleading, specifying that, "[t]o state a claim for relief," the complaint "must contain: (1) a short and plain statement of the claim showing that the pleader is entitled to relief; and (2) a demand for relief to which the pleader deems entitled." Trial Rule 8(E) adds that "[e]ach averment . . . shall be simple, concise, and direct," and that "[n]o technical forms of pleading . . . are required." Moreover, Trial Rule 8(F) provides that "all pleadings shall be so construed as to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points."

[10] The Indiana Supreme Court has elaborated on our pleading requirements, which are rooted in principles of notice pleading. *See generally KS&E Sports v. Runnels*, 72 N.E.3d 892, 901 (Ind. 2017). "In practice, [our] liberal standard merely requires that a 'complaint . . . put the defendant on notice concerning why it is potentially liable and what it stands to lose.'" *Id.* (second alteration in original) (quoting *Noblesville Redev. Comm'n v. Noblesville Assocs. Ltd. P'ship*, 674 N.E.2d 558, 564 (Ind. 1996)). To satisfy this standard, the plaintiff need not

"state all the elements of a cause of action." *Rankin*, 294 N.E.2d at 606. Rather, the plaintiff "need only plead the operative facts involved in the litigation." *Id.*

[11] Furthermore, although it "may be highly desirable" for the plaintiff to include a "statement of the [plaintiff's] theory" of liability in the complaint, the plaintiff "is not required" to plead a specific theory of liability. *Id.* Moreover, to the extent a defendant would benefit from explication of the theory of the case, "[o]ther means less drastic than dismissal . . . can be used to clarify the theory and basis for the cause of action," such as (1) a "motion for a more definite statement under [Trial Rule] 12(E)," (2) "our very broad discovery rules," and (3) "the pre-trial conference [contemplated] under [Trial Rule] 16(A)(1)," which facilitates the simplification of issues brought to trial. *Id.*; *cf. Trs. of Ind. Univ. v. Spiegel*, 186 N.E.3d 1152, 1157 (Ind. Ct. App. 2022) (noting that we generally view a Trial Rule 12(B)(6) motion "with disfavor" and instead encourage the use of discovery tools to identify a theory of the case, noting that "such motions undermine the policy of deciding causes of action on their merits" (quoting *Tony v. Elkhart Cnty.*, 851 N.E.2d 1032, 1035 (Ind. Ct. App. 2006)), *trans. denied*.

## II. Background on the Failure to Warn

[12] Here, the Plaintiffs alleged the Defendants were liable because Terry negligently failed to warn James of the disabled Mercury. "A traditional negligence claim consists of (1) a duty, (2) a breach of that duty, (3) an injury proximately caused

by the breach, and (4) damages." *WEOC, Inc. v. Niebauer*, 226 N.E.3d 771, 778 (Ind. 2024). This appeal focuses on whether Terry had a duty to warn James.

[13] Whether a legal duty exists under a set of circumstances "is a question of law for the court." *Lyons v. Richmond Cmty. Sch. Corp.*, 19 N.E.3d 254, 261 (Ind. 2014) (quoting *Benton v. City of Oakland City*, 721 N.E.2d 224, 232 (Ind. 1999)). To the extent "the element of duty has not already been declared or otherwise articulated" in an area of law, we often apply a "three-part balancing test" in determining whether a duty exists. *Goodwin v. Yeakle's Sport's Bar & Grill, Inc.*, 62 N.E.3d 384, 387 (Ind. 2016). That is, we look to "(1) the relationship between the parties; (2) the foreseeability of harm; and (3) public policy concerns." *Id.* However, in general, a person owes a duty to exercise "such care as a person of reasonable or ordinary prudence would exercise in view of all the conditions and circumstances . . . in the particular case." *N. Ind. Power Co. v. West*, 32 N.E.2d 713, 719 (Ind. 1941) (quoting *Union Traction Co. v. Berry*, 121 N.E. 655, 657 (Ind. 1919)). And "[a]ll operators of motor vehicles have a general duty to use ordinary care to avoid injuries to other motorists." *Sandberg Trucking, Inc. v. Johnson*, 76 N.E.3d 178, 184 (Ind. Ct. App. 2017) (quoting *Wilkerson v. Harvey*, 814 N.E.2d 686, 693 (Ind. Ct. App. 2004), *trans. denied*). Furthermore, because the standard of care due to a fellow motorist is "well-established," we have found it "unnecessary" to apply the three-part balancing test in this context. *Romero v. Brady*, 5 N.E.3d 1166, 1168 (Ind. Ct. App. 2014), *trans. denied*. We instead apply traditional Indiana tort law, *see, e.g.*, *id.* at 1168–69, and at times examine the Restatement of Torts or factually similar cases in

other jurisdictions to provide guidance in certain scenarios, *see, e.g.*, *Buchanan ex rel. Buchanan v. Vowell*, 926 N.E.2d 515, 521–22 (Ind. Ct. App. 2010) (consulting the Restatement (Second) of Torts and caselaw from Illinois courts); *cf. Mangold ex rel. Mangold v. Ind. Dep't of Nat. Res.*, 756 N.E.2d 970, 975 (Ind. 2001) (noting that when a duty has already been established, "the focus shifts to whether a given set of facts represents a breach," adding that "[a]n approach that focuses on rearticulating that duty based upon a given set of facts is misplaced").[3]

[14] Although motorists have a general duty to use ordinary care with respect to other motorists, "[a]s a general rule, an individual does not have a duty to aid or protect another person, even if he knows that person needs assistance." *Baker v. Fenneman & Brown Props., LLC*, 793 N.E.2d 1203, 1206 (Ind. Ct. App. 2003). Put differently, as a matter of law, the act of "rescue" generally goes above and beyond the applicable standard of care. *See, e.g.*, *L.S. Ayres & Co. v. Hicks*, 40 N.E.2d 334, 337 (Ind. 1942) ("[T]here is no general duty to go to the rescue of a person who is in peril."). Yet, "both common law and statutory exceptions to that general rule exist." *Baker*, 793 N.E.2d at 1206.

---

[3] We therefore decline the Appellants' invitation to apply the three-part balancing test to articulate a duty. Moreover, to the extent the Defendants suggest the complaint should be dismissed because the Plaintiffs "d[id] not allege Terry owed a duty of ordinary care while operating [the CMV]," Appellants' Reply Br. p. 5, we are unpersuaded that the pleading is deficient in this respect. *See* Ind. Trial Rule 8(F) ("[A]ll pleadings shall be so construed as to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points."); *see also KS&E Sports v. Runnels*, 72 N.E.3d 892, 901 (Ind. 2017) (noting that, based on principles of notice pleading, our "liberal [pleading] standard merely requires that a 'complaint . . . put the defendant on notice concerning why it is potentially liable and what it stands to lose'" (second alteration in original) (quoting *Noblesville Redev. Comm'n v. Noblesville Assocs. Ltd. P'ship*, 674 N.E.2d 558, 564 (Ind. 1996))).

Whenever the common law imposes a duty to warn, it is up to the fact-finder to decide whether the actor gave an adequate warning under the circumstances. *See Sandberg*, 76 N.E.3d at 184. In other words, the fact-finder must determine whether the actor's acts or omissions constituted a breach of the duty, and whether any such breach was the proximate cause of the plaintiff's injury. *See id.* In arguing the case to the jury, the plaintiff can ask the fact-finder to adopt a standard of care set forth in a statute. *See id.* (involving a common law duty to warn where the jury was asked to adopt a statutory standard of care). But, if the claim is premised on a common law duty to warn, the fact-finder is not obligated to adopt the statutory standard. *See id.* In contrast, if the plaintiff presents a claim of negligence per se—which is distinct from a claim premised on a violation of a common law duty—the fact-finder does not determine the applicable standard of care. *See generally, e.g., Erwin v. Roe*, 928 N.E.2d 609, 616 (Ind. Ct. App. 2010). Rather, as discussed later herein, it is a question of law whether the statute supplies the applicable standard of care. *See generally id.* In those cases, the fact-finder focuses instead on whether the actor complied with the statute (i.e., breached the statutory standard of care) and, if so, whether the breach proximately caused the plaintiff's damages. *See generally, e.g.*, *id.*

Here, the Defendants claim the trial court should have granted their Trial Rule 12(B)(6) motion to dismiss the complaint because the Plaintiffs failed to state a

viable theory of liability premised on failing to warn James.[4]  On appeal, the parties generally focus on two distinct theories of liability.  The first is premised on a common law duty to warn, i.e., that Terry contributed to the roadway hazard and therefore had a common law duty to give an adequate warning to fellow motorists as a part of exercising reasonable care to prevent injury to fellow motorists.  The second is premised on negligence per se, i.e., that a statutory standard of care applied as a matter of law, and Terry breached that standard because he did not turn on his emergency flashers and place warning devices beside his stopped CMV.  We address these distinct theories in turn.

## A. Common Law Duty: Increasing the Hazard

[17]  In arguing there was no common law duty to warn, the Defendants at times focus on portions of the Restatement.  In particular, the Defendants direct us to Section 314 of the Restatement (Second) of Torts (Am. Law Inst. 1965), which provides as follows: "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."  Section 314 of the Restatement (Second) of Torts goes on to explain that this general rule applies (thereby exempting a person from a duty to rescue) "only where the peril in which the actor knows that the other is placed is not due to any active force which is under the actor's control."  Restatement (Second) of Torts § 314 cmt. d. (Am.

---

[4] The Plaintiffs also alleged NFI was liable for negligent training and supervision in that, had Terry been properly trained and supervised, he would have warned James.  Because those theories of liability depend on Terry breaching a duty to warn James under the circumstances, we need not separately address them.

Law Inst. 1965). In general, the Defendants focus on the "creation" or "control" of a hazard, asserting that "[m]ere knowledge of a hazard, *without having created the hazard or having control over that hazard*, does not impose a duty to warn." Appellants' Br. p. 16 (emphasis added). In other words, they argue that if there was an existing hazard and the actor only *contributed* to that hazard, the common law does not impose a duty to warn—especially if the actor was not negligent in contributing to the hazard. As to this general issue, there is pertinent commentary in Section 314 of the Restatement (First) of Torts:

> The fact that the actor himself has previously, but without intent to harm or negligence towards another, created the dangerous condition by which he realizes that the other, ignorant of its existence, is about to be harmed, [is a circumstance that] may require the actor to warn the other of the dangerous condition or otherwise prevent it from causing harm to the other[.]

Restatement (First) of Torts § 314 cmt. e. (Am Law Inst. 1934).

[18] Here, the Plaintiffs alleged Terry struck the disabled Mercury before bringing his CMV to "a controlled stop on the right shoulder of [I-94]." Appellants' App. Vol. 2 p. 69. The Defendants maintain that Terry had no duty to warn because "[t]he risk—[the] disabled Mercury—was already created when Terry encountered it[.]" *Id.* at 17. They argue that "[s]imply encountering and contacting a negligently placed object does not mean control has been exerted and certainly does not mean a person who subsequently contacts that negligently placed object now owes a duty with respect to that object through mere contact." Appellants' Reply Br. p. 15. The Plaintiffs respond as follows:

The [pleaded] facts . . . viewed in the light most favorable to the [Plaintiffs] show that Terry exerted control over [the disabled Mercury] by striking and moving it with his [CMV]. When a [CMV] traveling at highway speed on an interstate hits a passenger vehicle, like [the Mercury], common sense dictates the speed and weight of the [CMV] will cause the passenger vehicle to move. A reasonable inference for this [c]ourt to draw is that Terry's conduct contributed [to] causing the hazardous condition by moving the disabled vehicle to where it was hit by [James's] semi-truck.

Appellees' Br. pp. 21–22. The Plaintiffs focus on Section 321 of the Restatement (Second) of Torts (Am. Law Inst. 1965), which states:

(1) If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.

(2) The rule stated in Subsection (1) applies even though at the time of the act the actor has no reason to believe that it will involve such a risk.

According to the Plaintiffs, this Section contemplates a theory of liability premised on contribution to a hazard. Indeed, the Plaintiffs argue that the Defendants "misinterpret this section as imposing liability only on the actor who created the risky condition," but "[t]he duty 'applies whenever the actor realizes or should realize that his act has created a condition [that] involves an unreasonable risk of harm to another, or is leading to consequences [that] involves such a risk.'" Appellees' Br. pp. 24–25 (emphasis removed) (quoting Restatement (Second) of Torts § 321 cmt. a. (Am. Law Inst. 1965)). They

ultimately argue that, "even if Terry's act of hitting [the] disabled [Mercury] was not tortious[,] . . . the consequence of his act was that [the] disabled [Mercury] was moved further into the roadway and into the travel lane where [James] was driving," and "[t]his . . . created an unreasonable risk of harm for other motorists, including [James], who may hit the disabled [Mercury]." *Id.*

[19] The parties direct us to Indiana caselaw, but to no case on all fours. *See generally, e.g.*, *Putnam Cnty. Sheriff v. Price*, 954 N.E.2d 451, 452 (Ind. 2011) (involving whether a county sheriff "owes a common law duty to warn the public of known hazardous conditions on the roadway," not the duty owed to a fellow motorist); *Romero*, 5 N.E.3d at 1167 (involving allegations that a driver was following a third-party vehicle too closely such that, when the third-party swerved in front of the plaintiff and the plaintiff maneuvered in avoidance, the driver had too little time to react, was positioned too closely, and the plaintiff struck the driver's vehicle); *Sandberg*, 76 N.E.3d at 181–84 (involving a driver who struck a deer, pulled over to the shoulder, failed to activate emergency flashers or place any warning devices, and ninety seconds later a motorist slid into the back of the parked truck); *Neal v. IAB Fin. Bank*, 68 N.E.3d 1114, 1116–17 (Ind. Ct. App. 2017) (involving a collision that occurred after several bank employees helped a motorist change a flat tire and get back on the road, even though the bank employees suspected the motorist was intoxicated).

[20] We find persuasive authority in *Glenn v. Conner*, 533 S.W.2d 297 (Tenn. 1976). There, a motorist was "forced . . . to slam on his brakes" when he approached a truck traveling in the same direction that did not have its taillights on. *Glenn*,

533 S.W.2d at 298. After slamming on the brakes, the motorist "lost control, crossed the center line[,] and collided with . . . [a third-party's] automobile" that was proceeding in the opposite direction. *Id.* The collision caused the third-party's automobile "to come to rest perpendicular to the highway, obstructing [an] entire . . . lane." *Id.* The motorist "made repeated verbal requests" to the third-party to move the automobile obstructing traffic. *Id.* When the motorist and the third-party saw an oncoming vehicle, they waved and yelled, but the oncoming vehicle "was forced to career broadside into the obstructing . . . automobile," resulting in injuries. *Id.* at 299. The issue on appeal was whether the motorist—who was not negligent in striking the third-party's automobile— could be liable for failing to adequately warn about the roadway hazard. *See id.*

[21] The Tennessee Supreme Court addressed the issue as a matter of first impression, considering whether a non-negligent driver could be liable for negligently failing to warn under the circumstances, i.e., that an exception applied under the common law necessitating a duty to exercise reasonable care in issuing a warning to fellow motorists. *See id.* Consulting a treatise and looking to caselaw in other jurisdictions, the *Glenn* Court concluded that the motorist "was under a 'common-law duty to warn' other motorists of the obstruction in the highway, to which he had contributed." *Id.* at 301. The Court held that "this duty applied, regardless of whether his contribution to the dangerous condition stemmed from his negligence in operating his vehicle." *Id.* The Court added that the duty to warn applied "even though a similar duty

rested upon the [third-party who] operat[ed] the obstructing vehicle," noting that "[i]t is no defense that a similar duty rested upon another person." *Id.*[5]

[22] To the extent the Defendants in this case focus on the driver of the Mercury—arguing that "[p]art of his duty included preventing further harm from his original wrongdoing"—in light of the persuasive analysis in *Glenn*, we are unpersuaded there is no cognizable claim against Terry because "Terry did not create the original obstacle in the roadway" and "had no duty or right to control . . . [the] disabled [Mercury]." Appellants' Br. p. 28.[6] In short, based on the allegations in the complaint, we cannot conclude that the negligence of a third party obviated Terry's duty to exercise reasonable care toward James.[7]

[23] In this case, the Plaintiffs did not specifically allege that Terry's collision with the disabled Mercury moved the Mercury in a way that increased the hazard. For example, based on the complaint before us, there is no indication that the

---

[5] Although the Court identified a duty to warn of the third-party's automobile, the Court ultimately determined that the motorist was not liable because the third-party's refusal to move his obstructing automobile was an unforeseeable intervening cause that "supersede[d] any negligence by [the motorist] in failing to properly warn oncoming motorists of the hazard to which he had contributed." *Id.* at 302.

[6] It is a separate issue whether the Defendants, if liable, can recover against the driver of the Mercury on the theory that the driver of the Mercury is wholly responsible for the Defendants' liability to the Plaintiffs.

[7] At times, the Defendants suggest the "duty to warn" is independent of the duty to exercise reasonable care toward a fellow motorist. *See* Appellants' Reply Br. p. 10 (suggesting the Plaintiffs are "asking this [c]ourt to hyperfocus on targeted duties more specific than the general duties owed by all motorists"). However, this suggestion overlooks the possibility that, under the circumstances, reasonable care required issuing some sort of warning to James. *Cf., e.g.*, *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003) (noting that "[w]hether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide," but "[w]hether a particular act or omission breached [that] duty is generally a question of fact for the jury").

collision caused the Mercury to block two lanes of traffic instead of one.[8]  Still, Indiana adheres to principles of notice pleading, recognizing that the plaintiff need not "state all the elements of a cause of action."  *Rankin*, 294 N.E.2d at 606.  Rather, the plaintiff "essentially need only plead the operative facts involved in the litigation."  *Id.* at 230.  And "[a]lthough a statement of the theory [of the case] may be highly desirable, it is not required."  *Id.*

[24]  All in all, in light of Indiana's notice pleading standard and having considered the duty owed to a fellow motorist, we conclude that the facts alleged in the complaint adequately encompass a viable theory of liability premised on Terry contributing to the hazard, regardless of whether Terry was negligent in striking the Mercury.  We therefore affirm the denial of the motion to dismiss under Trial Rule 12(B)(6) as to any claim premised on contribution to the hazard.

## B. Negligence Per Se: Statutory Violation

[25]  The Plaintiffs claim the Defendants could be liable based on a theory of negligence per se because, contrary to statute, Terry did not turn on his emergency flashers and place warning devices behind his CMV.  As for this theory of liability, even if the common law does not impose a duty—such as a duty to exercise reasonable care—a plaintiff might be able to recover because of the defendant's "unexcused or unjustified violation of a duty prescribed by

---

[8] To the extent the Plaintiffs made more specific allegations in their proposed Second Amended Complaint, which the trial court has not accepted, that pleading is not the operative pleading at this juncture.

statute[.]" *City of Fort Wayne v. Parrish*, 32 N.E.3d 275, 277 (Ind. Ct. App. 2015), *trans. denied*. Critically, however, the statutory standard of care applies only if the statute was designed to protect (1) "the class of persons in which the plaintiff is included" and (2) "the type of harm [that] has occurred as a result of the violation." *Id.* So long as these requirements are satisfied, "the law accepts the legislative judgment that acts in violation of [a] statute constitute unreasonable conduct." *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 276 (Ind. 2003). The intent of the legislature is "a question of law subject to de novo review." *Bojko v. Anonymous Physician*, 232 N.E.3d 1155, 1158 (Ind. 2024).

[26] When determining the legislature's intent behind a proffered statutory standard of care, courts generally look to "the language or text of the statutory provision, its location within the larger statutory scheme, the more general context of the statute, and indications of specific legislative intent." Restatement (Third) Torts § 14 (Am Law Inst. 2010) [hereinafter Restatement 3d]. All in all, we "assign words their 'plain meaning[.]'" *Morales v. Rust*, 228 N.E.3d 1025 (Ind. 2024) (*ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016)). Moreover, "[m]indful of what the statute says and what it doesn't say, we aim to 'avoid interpretations that depend on selective reading of individual words that lead to irrational and disharmonizing results.'" *Town of Linden v. Birge*, 204 N.E.3d 229, 237 (Ind. 2023) (quoting *ESPN, Inc.*, 62 N.E.3d at 1195). "Rather, we presume the 'legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals.'" *Id.* (quoting *Rodriguez v. State*, 129 N.E.3d 789, 793 (Ind. 2019)).

[27]   In the instant complaint, the Plaintiffs focused on Indiana Code section 8-2.1-24-18, which incorporates certain Federal Motor Carrier Safety Regulations ("FMCSRs"), including those promulgated in 49 C.F.R. section 392.22. "[T]he violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings." *Erwin*, 928 N.E.2d at 619 (quoting *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318 (2005)). Furthermore, "[w]hen we interpret administrative regulations, our court applies the same rules of construction that apply to statutes." *City of Gary v. Ind. Dep't of Environmental Mgmt.*, 967 N.E.2d 1053, 1057 (Ind. Ct. App. 2012).

[28]   The FMCSRs were promulgated pursuant 49 U.S.C. section 31136(a), where Congress directed the Secretary of Transportation to adopt regulations prescribing "minimum safety standards for commercial motor vehicles[.]" Congress mandated that, among other things, the FMCSRs ensure that "commercial motor vehicles are maintained, equipped, loaded, and operated safely[.]" *Id.* The FMCSRs apply to motor carriers and drivers alike. *See* 49 C.F.R. § 392.1(a) ("Every motor carrier, its officers, agents, representatives, and employees responsible for the management, maintenance, operation, or driving of commercial motor vehicles, or the hiring, supervising, training, assigning, or dispatching of drivers, shall be instructed in and comply with the rules[.]").

[29]   Among the FMCSRs is 49 C.F.R. section 392.22, which requires certain actions when a CMV is stopped on the shoulder of a road. Part (a) states:

> Whenever a [CMV] is stopped upon the traveled portion of a
> highway or the shoulder of a highway for any cause other than

necessary traffic stops, the driver of the stopped [CMV] shall immediately activate the vehicular hazard warning signal flashers and continue the flashing until the driver places the warning devices required by paragraph (b) of this section.

49 C.F.R. § 392.22(a). Moreover, part (b)(1) more specifically provides:

Whenever a [CMV] is stopped upon the traveled portion or the shoulder of a highway for any cause other than necessary traffic stops, the driver shall, as soon as possible, but in any event within 10 minutes, place the warning devices required by § 393.95 of this subchapter, in the following manner:

(i) One on the traffic side of and 4 paces (approximately 3 meters or 10 feet) from the stopped commercial motor vehicle in the direction of approaching traffic;

(ii) One at 40 paces (approximately 30 meters or 100 feet) from the stopped commercial motor vehicle in the center of the traffic lane or shoulder occupied by the commercial motor vehicle and in the direction of approaching traffic; and

(iii) One at 40 paces (approximately 30 meters or 100 feet) from the stopped commercial motor vehicle in the center of the traffic lane or shoulder occupied by the commercial motor vehicle and in the direction away from approaching traffic.

49 C.F.R. § 392.22(b)(1).

In challenging the denial of their Trial Rule 12(B)(6) motion to dismiss, the Defendants briefly argue that the FMCSRs impose a duty to warn only if the

CMV has been stopped for ten minutes and, in the complaint, the Plaintiffs did not definitively allege that Terry had been pulled over for at least ten minutes. *See* Appellant's App. Vol. 2 pp. 68–69 (setting forth the pertinent timeframes and alleging that "from approximately 2:50 a.m. through approximately 3:00 a.m., . . . Terry did not activate the hazard warning signal flashers on, nor place any warning [devices] . . . to alert approaching motorists of the hazards in the travel lane and shoulder of [I-94]"). However, drawing all reasonable inferences in favor of the Plaintiffs, we conclude that the complaint fairly encompasses an allegation that the CMV was stopped for at least ten minutes.

[31] The Defendants also focus on whether the Plaintiffs can import a standard of care from the FMCSRs. They argue the FMCSRs were designed to prevent a collision with the CMV, not a collision with a different hazard (such as a third-party's vehicle). Thus, they contend that James was not within the protected class and the FMCSRs were not designed to prevent this type of collision.

[32] In *Sandberg*, we reflected on the FMCSRs and the purpose behind requiring use of emergency flashers and warning devices. 76 N.E.3d at 188–89. However, in doing so, we did not squarely address a claim of negligence per se. *See id.* at 189 (noting "[n]either party offer[ed] any authority for the proposition . . . that Section 392.22 limits, expands, or otherwise defines the general duty of care a motorist owes to fellow motorists in Indiana"). Rather, the case implicated a common law duty to warn based on contribution to the hazard. *See id.* at 181 (involving a motorist who struck deer remains after a CMV first collided with the deer and left "the deer's remains spread over both lanes of the highway").

Thus, in discussing the FMCSRs, we were cautious to explain that "[w]hatever Section 392.22's effect in other contexts," we "believe[d] . . . it [was] best to view [the FMCSRs] as a useful guideline in the context of Indiana negligence law." *Id.* at 188. The case at hand presents a different context, involving a claim that the FMCSRs per se established the applicable standard of care.

[33] As for the FMCSRs, it is compelling that a stated purpose behind these regulations was to ensure that "[CMVs] are . . . operated safely." *See* 49 U.S.C. § 31136(a). Based on this broad congressional directive, and the specific language used in the FMCSRs—which requires warnings irrespective of whether the CMV is blocking the road or entirely on the shoulder—these regulations strike us as designed to protect not only the driver of a CMV, but also other motorists as they approach a CMV. Further, the required warnings alert motorists to the immediate area around the CMV, which might include debris from a blown tire or other hazards that prompted a need for the CMV to pull over. In this way, the required warnings prevent collateral collisions— including those between third parties—as approaching motorists gauge the need to change lanes (e.g., to avoid hazards in the roadway or to protect the driver of the CMV, who might be on the side of the road assessing damage to the CMV).

[34] All in all, in light of the broad safety goal animating the FMCSRs and the natural effect of the regulatory language, we cannot say the exclusive aim behind requiring warnings was to prevent collisions with the CMV or driver. This strikes as too narrow of a reading of the regulation. We instead conclude

that James was within the class of persons protected by the FMCSRs and that these regulations were designed to prevent the type of collision at issue here.

[35] For the foregoing reasons, we conclude that the Plaintiffs stated a viable claim of negligence per se premised on the violation of the FMCSRs.[9] We therefore affirm the denial of the motion to dismiss as to any claim of negligence per se.

## Conclusion

[36] The complaint encompasses viable claims premised on (1) the failure to warn after potentially contributing to a hazard on the road, and (2) the failure to comply with the FMCSRs. We therefore affirm the denial of the Defendants' Trial Rule 12(B)(6) motion to dismiss and remand for further proceedings.

[37] Affirmed and remanded.

Riley, J., and Brown, J., concur.

ATTORNEYS FOR APPELLANTS
Edward W. Hearn
Kyle J. Farris
Johnson & Bell, P.C.
Crown Point, Indiana

---

[9] Based on the allegations in the complaint, it is unclear how quickly Terry pulled over to the shoulder after striking the Mercury. *See* Appellant's App. p. 69 (alleging only that "Terry struck the Mercury and came to a controlled stop on the right shoulder of [I-94]"). With factual development, the location of the CMV might lead to questions of causation, e.g., whether, irrespective of warnings, James would have struck the Mercury. However, these questions of causation do not impact the existence of a legal duty derived from a regulation. *See generally Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 390–91 (Ind. 2016) (discussing the role of a fact-finder in determining whether the conduct at issue was the proximate cause of the plaintiff's injury).

ATTORNEYS FOR APPELLEES

Scott A. Faultless
Sidney M. Lewellen
Craig Kelley & Faultless LLC
Indianapolis, Indiana